**In re MOUNTAIN CARPET, INC., Bankrupt.**

**YANKEE LEASING COMPANY, Plaintiff,**

**v.**

**MOUNTAIN CARPET, INC. and James H. Averill, Trustee, Defendants.**

**Bankruptcy No. B78–192.**

United States Bankruptcy Court, D. Vermont.

May 8, 1979.

Peter H. Banse and Paul Kulig, Rutland, Vt., for plaintiff.

James H. Averill, trustee.

David D. Robinson, Pittsford, Vt., for defendants.

Matthew T. Birmingham, III, Cavendish, Vt., for bankrupt.

## FINDINGS OF FACT, MEMORANDUM AND CONCLUSIONS

CHARLES J. MARRO, Bankruptcy Judge.

This is an adversary proceeding on the Complaint of Yankee Leasing Company, filed November 20, 1978, to reclaim personal property. A continued hearing was held on January 9, 1979 which was further continued to March 5, 1979 on which date the attorney for the trustee notified the Court that he had no further testimony to introduce and that, therefore, there was no need for the further continued hearing.

Although the plaintiff had a reporter present at the continued hearing on January 9th the transcript has been waived and the issues are being determined on the basis of the notes taken by the Court and his clerk.

From the testimony adduced at the continued hearing, the exhibits received, the following Facts have been established.

## FINDINGS OF FACT

On or about April 20, 1977 the plaintiff did, pursuant to an Agreement signed in behalf of the bankrupt, Patrick H. Seal, President, and approved by the plaintiff, deliver to the bankrupt certain personal property described as "office furniture, steelcase per invoice #'s 39040, 39041 and 39042, and Table Unlimited invoice # 39044."

This Agreement was labeled "Lease No. 10203" and the terms and conditions of Lease were spelled out in 13 numbered paragraphs which provided for prepaid rentals of $519.74 to be applied to the first and last month with a total of 24 rent payments at $259.87 per month.

The Agreement under paragraph # 3 contains the following:

"NO REPRESENTATIONS MADE BY ANYONE OTHER THAN AN AUTHORIZED OFFICER OF LESSOR, IN WRITING, ARE BINDING ON LESSOR."

The term of the Lease is spelled out under paragraph 6 as becoming effective upon shipment of the equipment to the lessee and shall end at the expiration of the number of months, or other calendar intervals, specified in the Agreement.

Paragraph 11 reads as follows:

"OWNERSHIP, SURRENDER, AND ASSIGNMENT. The equipment is, and shall at all times be and remain, the sole and exclusive personal property of LESSOR; and LESSEE shall have no right, title, or interest therein or thereto except as expressly set forth in this lease. Upon the expiration, or earlier termination, of this lease, LESSEE shall return, to LESSOR, the equipment in good repair, condition, and working order, ordinary wear and tear resulting from proper use thereof alone excepted, by delivering it, packed and ready for shipment, to such place or carrier as LESSOR may specify. In connection with any assignment by LESSOR of its interest in this instrument or the equivalent, LESSEE will recognize such assignment and furnish the assignee with a written acknowledgment that this lease is in full force and effect and that LESSEE is not entitled to any counterclaim or set-off. If this instrument provides for any covenant or condition to be performed by LESSOR, LESSEE agrees that no such assignee shall be obligated thereon."

The Agreement further provides that, in the event of default by the lessee in the payment of rent, or in the event the Petition in Bankruptcy is filed by or against the lessee, the lessee's right to possession of the equipment shall terminate.

The bankrupt has, in fact, defaulted in the payment of rent and did, on October 24, 1978, file a Voluntary Petition in Bankruptcy upon which it was adjudicated.

There is no provision in the Agreement for the purchase of the office furniture and equipment by the bankrupt as lessee. Further, no agreement was ever made between the plaintiff and the defendant, verbal or otherwise, for such purchase.

No financing statement was ever filed pursuant to the requirements of the Uniform Commercial Code.

## MEMORANDUM AND CONCLUSIONS

The issue to be determined is whether the Agreement signed by the parties is a "true lease" or in the nature of a Security Agreement requiring the filing of a financing statement for perfection of the security interest created by such an Agreement.

Article 9 of the UCC which deals with "Secured Transactions" applies as far as concerns personal property to any transaction (regardless of its form) which is intended to create a security interest in personal property. It also applies to a lease intended as security. *9A VSA § 9–102*

Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner

of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. *9A VSA Sec. 1–201(37).* Otherwise stated, it would appear that whenever it can be found that a lease agreement concerning personal property contains provisions the effect of which are to create in the lessee an equity or pecuniary interest in the leased property the parties are deemed as a matter of law to have intended the lease as security within the meaning of Sections 9–102 and 1–201(37) of the Uniform Commercial Code. *In Re Roger's Bakery Inc.* (U.S.D.C. E.D. Pa.) 1 UCC Rep. Ser. 342.

There is no paucity of cases which revolve around the issue under consideration. Some have construed the lease agreement as one intended as security for the property leased and, therefore, subject to the filing requirements of the U.C.C. *In Re Telemax Corp.* (U.S.D.C.S.D.N.Y.) 12 UCC Rep Ser 742; *Woco v. Benjamin Franklin Corp.* (U.S.D.C.D.N.H.) 20 UCC Rep Ser 1015; *In re Tillery* (C.C.A. 5th Cir.) 571 F.2d 1361, 23 UCC Rep Ser 1335; *In Re Lifkin* (U.S.D. C.D. Maine) 15 UCC Rep Ser 708.

On the other hand, the following cases have decided that documents labeled as leases are in fact "true leases". *In Re Rogers Bakery, Inc.* (U.S.D.C.E.D.Pa.) 1 UCC Rep Ser 342; *Sanders v. National Acceptance Co. of America* (C.C.A. 5th Cir.) 383 F.2d 606, 4 UCC Rep Ser 793; *In Re A & T Kwik-N-Hande, Inc.* (U.S.D.C.M.D.Ga.) 13 UCC Rep Ser 960; *In Re Lockwood* (U.C.D.C.D.Conn.) 16 UCC Rep Ser 195; *Rushton v. Shea* (U.S.D.C.D.Del.) 419 F.Supp. 1349, 22 UCC Rep Ser 273; *In Re DeVita Fruit Co.* (CCA 6th Cir.) 12 UCC Rep.Ser. 1.

Such a divergence in results emphasizes the statutory mandate of the U.C.C. that a determination must be made from the facts in each case, *9A V.S.A. 1–201(37).*

■ An examination of the lease agreement at issue within the confines of its four corners clearly establishes that the lessor was not given any right to purchase the property and, as a result, he could not have obtained any equity or pecuniary interest in the leased property. Therefore, the document in and of itself was a true lease. If the parol evidence rule were applied the matter would have been readily resolved. However, Bankruptcy Courts have differed as to the application of this rule. In the *Roger's Bakery* case, supra, the Court clearly determined that the parol evidence rule is not one of evidence but a rule of substantive law. As a result the Court ruled that the intent of the parties must be gathered from the agreement as written and parol evidence cannot be received to show a different meaning.

On the other hand, Bankruptcy Judge Babitt, in *Telemax Corp.* (U.S.D.C.S.D.N.Y.) 10 U.C.C.Rep.Ser. 1316, 1318, justified verbal proof as follows:

"The parol evidence rule does not foreclose proof of a separate oral agreement in the absence of evidence that the written lease was intended as a final embodiment of the agreement. See *Cornwell Quality Tools Co. v. C.T.S. Co. Inc.*, 446 F.2d 825 (9th Cir. 1971). Indeed it should be plain that the evidence which the court concludes to be admissible does not purport to vary the provisions of these equipment 'leases'. Rather it amplifies the ultimate and total purpose of the parties. In essence, it completes the written portion. It merely completes what the parties wrote without varying any of the terms. See *Laskey v. Rubel Corp.*, 303 N.Y. 69, 100 N.E.2d 140 (1951)."

Other cases sustain the admission of parol evidence to show the intention of the parties. *In Re Lockwood* (U.S.D.C.D.Conn.) 16 U.C.C.Rep.Ser. 195; *In Re A & T Kwik–N–Handi, Inc.* (U.S.D.C.M.D.Ga.) 13 U.C.C. Rep.Ser. 960.

This Court did permit verbal testimony by both parties. The plaintiff's vice president, as its only witness, testified that the only document executed by the parties was the lease; that they had no other written agreements with the bankrupt; that he had approved about 600 agreements which were in the same form as the one signed by the bankrupt; that no rider giving the bankrupt the option to purchase was attached to the lease; that when a lease is given the

right to purchase a rider is attached under which he may obtain title to the property by paying the then market price; that out of the 600 contracts he approved only about 20 had such an attached rider.

The bankrupt, improved as a witness by the trustee, testified that he made arrangements for lease of the furniture for a period of two years with a deposit of about $500; that he was told that he could purchase it after he completed his payments under the lease; that there was no written rider attached to the contract and there were no documents which varied the terms of the lease.

In *Alpha Creamery Co. Inc.* (U.S.D.C.W. D.Mich.) 4 U.C.C.Rep.Ser. 794, 797–8, the Bankruptcy Court did succinctly recite the guidelines to be followed in determining whether or not a lease is a security agreement as follows, viz:

"From such cases and other authorities on this subject the following factors should be considered in determining whether or not a lease is a security agreement:

"1. The facts in each case control to show intention of the parties to create a security interest.

"2. Reservation of title in a lease or option to purchase appurtenant to or included in the lease does not in and of itself make the lease a security agreement.

"3. Lease agreement which permits the lessee to become the owner at the end of the term of the lease for a nominal or for no additional consideration is deemed intended as a security agreement as a matter of law.

"4. The percentage that option purchase price bears to the list price, especially if it is less than 25%, is to be considered as showing the intent of the parties to make a lease as security.

"5. Where the terms of the lease and option to purchase are such that the only sensible course for the lessee at the end of the lease term is to exercise the option and become the owner of the goods, the lease was intended to create a security interest.

"6. The character of a transaction as a true lease is indicated by:

"(a) Provision specifying purchase option price which is approximately the market value at the time of the exercise of the option.

"(b) Rental charges indicating an intention to compensate lessor for loss of value over the term of the lease due to aging, wear and obsolescence.

"(c) Rentals which are not excessive and option purchase price which is not too low.

"(d) Facts showing that the lessee is acquiring no equity in leased article during the term of lease."

The application of the foregoing guidelines does establish that the parties executed a "true lease" and not one intended for security. Therefore, the filing of a financing statement was not required and the plaintiff is entitled to reclamation of the furniture even as against the trustee as a lien creditor under the strong arm clause of the Bankruptcy Act—Section 70(c).

Judgment is being entered for the plaintiff.