In re AIR VERMONT, INC., North Atlantic Airlines, Inc., Debtors.

AIR VERMONT, INC., North Atlantic Airlines, Inc., Plaintiffs,

v.

BEECH ACCEPTANCE CORPORATION, INC., Beech Aircraft Corporation, Defendants.

Bankruptcy Nos. 84–00017, 84–00019. Adv. No. 84–0005.

United States Bankruptcy Court, D. Vermont.

Nov. 9, 1984.

See also Bkrtcy., 44 B.R. 433; Bkrtcy., 44 B.R. 440.

Alan D. Port, Burlington, Vt., for defendants, Beech Acceptance Corp., Beech Aircraft Corp.

Brian Dempsey, Office of Joseph C. Palmisano, Barre, Vt., for debtors-plaintiffs.

## MEMORANDUM AND ORDER ON MOTION OF DEFENDANT FOR SUMMARY JUDGMENT

CHARLES J. MARRO, Bankruptcy Judge.

In this adversary proceeding, the Court has for determination the Motion of Beech Acceptance Corporation filed October 9, 1984, for Summary Judgment on Count II of the Amended Complaint of the Debtors against Beech Acceptance Corporation, Inc., and Beech Aircraft Corporation, which Count II reads as follows:

"Debtor contends that the Beech Aircraft taken in possession by the Defendant are subject to a Purchase Sales Agreement and not a lease agreement. And, that unless the Defendant, Beech Acceptance Corporation and/or Beech Aircraft Corporation have a proper security agreement and UCC filing, the Debtor should have the aircraft free and clear of any lien."

Originally, the Debtors filed on March 2, 1984 a Complaint against Beech Acceptance Corporation to recover a deposit of $40,000.00 claimed to be property of the estate. On March 21, 1984, it filed a Motion to Amend its Complaint, which included Count II, and the Motion was granted by Order entered April 6, 1984.

### ESTABLISHED FACTS

North Atlantic Airlines, Inc., and Air Vermont, Inc., filed separate Petitions for Relief under Chapter 11 of the Bankruptcy Code on January 30, 1984 and January 31, 1984. The cases were consolidated by Order entered February 2, 1984.

Subsequent to the filing of the Amended Complaint, Beech Acceptance Corporation and the Debtors entered into a Stipulation dated March 29, 1984, filed April 2, 1984, and approved by the Court on April 6, 1984. This Stipulation includes the following:

"WHEREAS, the Debtor acknowledges that it has failed and will fail to

make payments as required under the agreements between Beech Acceptance Corporation and the Debtor with respect to the use of two Beech C–99 aircraft bearing Serial Nos. U201 and U205; and

"WHEREAS, said aircraft are now in possession of Beech Acceptance Corporation pursuant to Order of the Bankruptcy Court dated March 9, 1984;

"NOW, THEREFORE, the parties further stipulate as follows:

"1. The two Beech C–99 aircraft bearing Serial Nos. U–201 and U–205 shall be permanently possessed by Beech Acceptance Corporation for its own benefit, which possession shall not be affected by 11 U.S.C. §§ 362 and 363.

"2. Beech Acceptance Corporation may deal with and dispose of the said two Beech C–99 aircraft, bearing Serial Nos. U–201 and U–205 in any commercially reasonable manner.

"3. Neither this stipulation or any actions taken pursuant hereto shall be deemed a waiver by either the Debtor or Beech Acceptance Corporation of any claim which it may have against the other, nor shall this stipulation be deemed an admission of any fact by either party hereto."

The C–99 Serial No. U–201 Beech Aircraft was purchased by Beech Acceptance Corporation, Inc., from Beech Aircraft Corporation on March 18, 1983 and the Bill of Sale evidencing this purchase was filed on June 11, 1983 in the office of the Federal Aviation Administration.

The Serial No. U–205 Beech Aircraft was purchased by Beech Acceptance Corporation, Inc., from Beech Aircraft Corporation on June 24, 1983 and the Bill of Sale evidencing this purchase was filed in the office of the Federal Aviation Administration on October 21, 1983.

The U–201 and the U–205 Beech Aircraft were leased by Beech Acceptance Corporation to the Debtor, Air Vermont, Inc., by separate aircraft leases, both of which were in the same form and in identical phraseology except for the dates of execution and a description of the aircraft. The U–201 was leased under a lease designated "Aircraft Lease Number U–201" dated February 23, 1983 and recorded in the office of the Federal Aviation Administration on June 11, 1983. The U–205 was leased under a lease designated "Aircraft Lease Number C99 U–205" dated June 24, 1983 and recorded in the office of the Federal Aviation Administration on October 21, 1983.

The U–201 was leased for a term of 108 months with a commencement date of March 18, 1983 and a rental of $18,500.00 per month payable in advance on the commencement date. Under the schedule appended to the lease, the stipulated value of the aircraft was given at $1,379,000.00, and on the 9th anniversary date, it was given as the fair market value.

The lease provided for a security deposit of $20,000.00 which was to be returned by the Lessor to the Lessee at the end of the lease term provided that the Lessee faithfully performed all of the terms and conditions of the lease.

The U–205 was leased for a term of 108 months with a commencement date of June 24, 1983 and a rental of $18,500.00 per month payable in advance on the commencement date. Under the schedule appended to the lease, the stipulated value of the aircraft was given at $1,379,000.00, and on the 9th anniversary date, it was given as the fair market value.

The lease provided for a security deposit of $20,000.00 which was to be returned by the Lessor to the Lessee at the end of the lease term provided that the Lessee faithfully performed all of the terms and conditions of the lease.

The terms of the two leases which, as indicated, were identical, included the following provisions: the aircraft was leased "as is" without warranty or representation; the Lessee, at its own expense, at all times during the lease term was to maintain the aircraft and keep it currently certified and completely airworthy and in good and safe operating order; the Lessee assumed all risk of loss, destruction, theft, or taking or

damage to the aircraft from any cause whatsoever; the lessee at all times during the term was, at its own expense, to procure and maintain insurance of the types, in the amounts and with insurers acceptable to the Lessor; the Lessee was to exonerate and indemnify the Lessor, its agents, officers and employees and assigns, against the holding them harmless from, any and all claims, actions, suits and proceedings; the Lessee, at its own expense, was to procure and maintain in effect all licenses, certificates, permits and other approvals required by the various agencies.

Each lease also provides that the lessee understands and agrees that it acquires no right of beneficial ownership or equity in the aircraft by payment of rentals and unless otherwise specifically agreed to in writing lessee shall not have the right to register the aircraft in lessee's name with the Federal Aviation Administration ("FAA") or with any other governing authority (Sec. 3 of lease); that the lessee acknowledges and agrees that: (a) Ownership of the title to the aircraft and all accessions thereto vest in and remain with the Lessor; that the lessee will make no claim or assert any right to such aircraft inconsistent with the lessor's ownership and title to the aircraft (Sec. 5 of lease).

## DISCUSSION

Beech seeks summary judgment as to Count II of the debtor's complaint on the ground that it is entitled to it as a matter of law since, it contends, there is no genuine issue as to any material fact. On the other hand the debtor argues that the two "agreements" relating to the U–201 and U–205 aircraft were, in fact, sales agreements; that through subsequent dealings and correspondence an oral option to purchase arose which resulted in the sales agreements. It, therefore, contends that there is a genuine issue of fact which must be determined by oral testimony. The court does not agree.

The pertinent part of Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The court recognizes that summary judgment is a drastic remedy and that it should resolve all doubts as to the existence of genuine issues of fact against the moving party. The court will further view all inferences from the facts in a light most favorable to the parties opposing the motion. *Mid-South Grizzlies v. National Football League*, (E.D.Pa.1982), 550 F. Supp. 558; *United States v. Diebold* (1962), 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176.

As stated in *In re Rineer* (Bankr.N.D.Ill. 1982), 22 B.R. 447;

> The movant bears the burden of proving that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Thus, summary judgment may be denied even where the opposing party offers no evidence, if the movant fails to meet his burden. *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955, 965 (N.D.Ill.1972). Doubts as to the existence of an issue of fact are resolved in favor of the party opposing the motion. If different inferences and conclusions can reasonably be drawn from the facts offered, summary judgment should be denied. *Harvey v. Great Atlantic and Pacific Tea Co.*, 388 F.2d 123, 124–25 (5th Cir.1968). *See also, In re Chong*, 16 B.R. 1, 5 (Bkrtcy. Hawaii 1980).

Summary judgment must be denied where there remains the slightest doubt as to any material fact. *United States v. Del Monte De Puerto Rico, Inc.* (1st Cir.1978) 586 F.2d 870, 872. *See also, In re Air Vermont, Inc.* unpublished memorandum opinion dated September 28, 1984.

The record in this case fails to disclose any doubt as to any material fact. The parties are in agreement that the aircraft leases as to the U–201 and U–205 Beech Aircraft were executed by both parties on

February 23, 1983 and June 24, 1983 and that they were both recorded in the office of the Federal Aviation Administration on June 11, 1983 and October 21, 1983, respectively. It therefore becomes strictly a matter of legal interpretation as to whether the agreements executed are "true leases", leases intended as security for the property leased or contracts for sale and purchase of the aircraft. Such an interpretation can be accomplished merely by the examination of the agreements within the confines of their four corners. The debtor has not contended that any of the provisions in the agreements are ambiguous but asserts that they are agreements of sale and purchase of the aircraft rather than leases. In effect it is seeking to contradict the terms of the agreements by introducing parol evidence. This would constitute a violation of the parol evidence rule which is one of substantive law. Wigmore on Evidence (3rd ed.) Sec. 2400; *Wootton Hotel Corp. v. Northern Assurance Co.* (3d Cir.1946) 155 F.2d 988. The court, however, does recognize that parol evidence has been permitted to show the intent of the parties without varying any of the terms. *In re Telemax Corp.* (Bankr.S.D.N.Y.1971) 10 U.C.C.Rep.Serv. 1316; *In re Mountain Carpet, Inc.* (Bankr. D.Vt.1979) 11 B.R. 729. Such is not the case here. The debtor seeks to convert a "true lease" or at most, a lease intended as security for the property leased into a contract for sale and purchase of the aircraft. In addition, the court is somewhat puzzled as to the debtor's position. In its memorandum filed October 18, 1984 at page 3 it contends "that the agreements between Air Vermont and Beech Acceptance were, in fact, sales agreements. Through subsequent dealings and correspondence an oral option to purchase arose which resulted in the sales agreements." It seems to be claiming that the agreements were sales agreements ab initio i.e. when executed and also that subsequently through dealings and correspondence they became sales agreements after an oral option to purchase arose. This appears to be a clear contradiction. Further, an oral option to purchase an aircraft worth $1,379,000.00

would be unenforceable by the debtor by virtue of the statute of frauds. 9A V.S.A. § 2–201(1). *See also McGuirk v. Ward,* (1947), 115 Vt. 221, 55 A.2d 610, holding that a contract granting to another an option to buy land is an agreement concerning land, and is within the statute of frauds. The same principle logically also applies to an option to purchase personal property.

The debtor further argues that nowhere in the original lease is there any language which would meet the criteria of a security agreement as set forth in the Uniform Commercial Code which it maintains is still applicable as state law in determining the underlying validity of any conveyance or instrument. Citing *Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678, 36 U.C.C.Rep.Serv. 1 (1983), *State Securities Company v. Aviation Enterprises, Inc.* (10th Cir.1966), 355 F.2d 225. It points out that in Vermont creation of an enforceable security interest requires a writing signed by the debtor, containing an adequate description of the collateral, and indicating an agreement creating a security interest. Citing *General Motors Acceptance Corp. v. Lefevre* (D.Vt.1983), 38 B.R. 980, 983. It then argues that in the instant case, the actions, practices and agreement of the parties are factual issues which must be reviewed by the court. An evidentiary hearing for this purpose is deemed unnecessary since the court is in a position, as hereinabove indicated, to interpret the leases as written without oral testimony.

It is true that, under ordinary circumstances, an enforceable security interest must be based on a written security agreement. 9A V.S.A. § 9–203(1)(b). However, the real issue for determination is whether the rights of Beech in the aircraft which spring from the written agreements captioned as "AIRCRAFT LEASE NUMBER U–201" and "AIRCRAFT LEASE NUMBER C 99 U–205" are superior to those of the debtor. Whether these instruments are construed as "true leases" or as leases intended as security for the property

leased, the net result is the same since Beech has complied with the recording requirements for 49 U.S.C. § 1403(c) which has preempted the Uniform Commercial Code and other state filing requirements. *State Secur. Co. v. Aviation Enterprises, Inc.* (10th Cir.1966), 355 F.2d 225, 22 A.L. R.3d 1263; *Northern Illinois Corp. v. Bishop Distributing Co.* (W.D.Mich.1968), 284 F.Supp. 121; *Texas National Bank v. Aufderheide* (E.D.Ark.1964), 235 F.Supp. 599; *Philco Aviation, Inc., v. Shacket* (1983) 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678.

■ Both parties have cited *In re Brookside Drug Store, Incorporated* (Bankr.D. Conn.1980), 3 B.R. 120 and the criteria therein set forth as guidelines which may be considered to determine whether the lease agreement provides for a hidden security interest. It clearly appears that the "aircraft leases" in the instant case contain certain provisions which would tend to support an agreement for a security interest in the aircraft. However, these are not fully determinative of the issue. Under the Uniform Commercial Code whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. 9A V.S.A. § 1-201(37). Otherwise stated, it would appear that whenever it can be found that a lease agreement concerning personal property contains provisions the effect of which are to create in the lessee an equity or pecuniary interest in the leased property the parties are deemed as a matter of law to have intended the lease as security within the meaning of Sections 9–102 and 1–201(37) of the Uniform Commercial Code. *In re Roger's Bakery Inc.* (U.S.D.C.E.D.Pa.) 1 UCC Rep.Serv. 342. *In re Mountain Carpet, Inc.* (Bankr.D.Vt.1979), 11 B.R. 729, 731.

■ In the instant case the leases contained neither an option to purchase nor an agreement that the debtor as lessee would become or have an option to become the owner of the property for no additional or for a nominal consideration. Lacking these provisions the agreements appear to be more in the nature of "true leases." Nevertheless, in the final analysis the ultimate test is whether the debtor as lessee obtained any equity or pecumary interest in the leased property. See *In re Mountain Carpet, Inc.,* supra. No such interest was acquired by the debtor under the leases. On the contrary they specifically provide that the lessee understands and agrees that it acquires no beneficial ownership or equity in the aircraft by payment of rentals; that it has no right to register the aircraft in the lessee's name with the "FAA"; that it acknowleges and agrees that the ownership and title to the aircraft and all accessions thereto vest and remain in the lessor and that the debtor as lessee will claim or assert no right to such aircraft inconsistent with the lessor's ownership and title to the aircraft. In addition the debtor in the stipulation executed March 29, 1984 has acknowledged that it has failed to make payments under the agreements between Beech and the debtor with respect "to the use of two C–99 aircraft bearing Serial Nos. U 201 and U 205". A fair inference from this stipulation is that the aircraft were being used under the aircraft leases as such and that there was no agreement between the parties for their purchase. Under these circumstances the debtor is estopped from claiming that the agreements are anything but leases. See *In re Kors, Inc.* (Bankr.D.Vt.1981), 5 C.B. C.2d 872, 13 B.R. 683. The inevitable conclusion is that the aircraft leases are in fact "true leases." As a lessor thereunder Beech is entitled to the benefits which flow from § 1110 of the Bankruptcy Code i.e. to take possession of the aircraft and its equipment in compliance with the provisions of the leases, the debtor having failed before 60 days after the date of the order for relief (January 31, 1984) to pay the rent reserved under the leases (see par. 3 of

stipulation, recited supra) and to perform its obligations under the leases. The rights of Beech are buttressed by its compliance with 49 U.S.C. § 1403(c) in recording its leases in the office of the Federal Aviation Administration on June 11, 1983 and October 21, 1983. This occurred long before the debtor, pursuant to § 1107 of the Bankruptcy Code acquired rights as a hypothetical lien creditor on January 31, 1984 by the filing of its petition for relief. The result would be the same even if the aircraft leases were construed as leases intended as security in the aircraft. The system of recording established and maintained by the Federal Aviation Administration applies equally to a lease as to "any other instrument executed for security purposes." 49 U.S.C. § 1403(a)(2). Beech has, by recording, established its rights to the aircraft free and clear of any claims thereto of the debtor.

Since the only issue raised by the debtor as to Count II of the amended complaint is that the leases are in fact sales agreements rather than "true leases" and the court has determined otherwise Beech is entitled to summary judgment.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED that the motion of Beech for summary judgment is GRANTED.