**Revised January 29, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

———————————————————

**No. 97-11114**

———————————————————

**MERRITT-CAMPBELL, INC.,**

**Plaintiff-Counter Defendant-**
**Appellee-Cross-Appellant,**

**VERSUS**

**RxP PRODUCTS, INC.,**

**Defendant-Counter Plaintiff-**
**Appellant-Cross Appellee.**

———————————————————————

Appeals from the United States District Court
for the Northern District of Texas

———————————————————

January 27, 1999

Before REYNALDO G. GARZA, STEWART AND PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:


### I.  Factual and Procedural Background

In August, 1995, Carl Merritt ("Merritt") telephoned RxP and talked to its President, Don Woodward ("Woodward"), about selling a fuel additive known as "RxP Gas Kicker" as a private label product.  Woodward referred Merritt to RxP's National Sales Manager, James Potts ("Potts").

On August 19, 1995, Potts met with Merritt. During the next few weeks, the parties had numerous discussions relating to the potential private label arrangement. On September 18, 1995, Merritt-Campbell, Inc. ("M-C") was incorporated by Merritt and Harvey Campbell ("Campbell").

On September 28, 1995, Merritt gave Potts a proposed agreement which Potts faxed to Woodward the following day. Woodward made changes to the proposal, signed it, and returned it to Potts to be signed by M-C. On October 3, 1995, Merritt signed the agreement on behalf of M-C.

The agreement in its entirety states:

> This agreement is made on this 28th day of September, 1995, between RxP Products, Inc., hereafter referred to as RxP, and Merritt-Campbell, Incorporated, hereinafter referred to as Merritt-Campbell. In consideration of the sum of ten dollars ($10.00), the receipt of which is acknowledged, RxP agrees to sell to Merritt-Campbell the product marketed as "RxP Gas Kicker" under the following terms:
>
> 1. RxP guarantees the following price to Merritt-Campbell for a period of five (5) years from the date of first order.
>    a. RxP Gas Kicker bottled in 2.5 ounce quantities-
>    $1.25 per bottle (excluding labels).
>    b. RxP Gas Kicker in 55 gallon drum quantity-
>    $1,280,00 (sic) per drum.
> Said pricing may be increased only in the case of documented price increases to RxP for raw materials.
>
> 2. RxP will bottle RxP Gas Kicker in either green or black bottles, as provided as samples, upon request for Merritt-Campbell.
>
> 3. RxP guarantees shipment within fourteen (14) days from receipt of order from Merritt-Campbell.
>
> 4. Both RxP and Merritt-Campbell agree unconditionally to maintain confidentiality regarding the relationship between the two companies. This confidentiality includes, but is not limited to, any disclosure of the source product market by RxP and Merritt-Campbell. The scope of this confidentiality includes, but is not limited to, any director, officer, employee, or agent of both RxP and Merritt-Campbell.

5. It is understood by RxP that it is the intention of Merritt-Campbell to market the product heretofore referred to as "RxP Gas Kicker" under a private label.

On November 9, 1995, Merritt presented to Potts a purchase order for 25,000 bottles of product with 60-day credit terms. Potts refused the purchase order because it contained credit terms. On April 8, 1996, RxP received a second order and a cashier's check from M-C for a total of 8,016 bottles of RxP Gas Kicker. RxP refused the order and returned the cashier's check to M-C uncashed.

On May 17, 1996, M-C filed suit against RxP in the United States District Court for the Northern District of Texas. M-C claimed that RxP breached a requirements contract entered into by RxP and M-C in September of 1995. M-C claimed that the contract entitled it to purchase from RxP quantities of RxP Gas Kicker. M-C described the contract as one for the sale of goods and acknowledged that it was governed by the Uniform Commercial Code ("UCC"). M-C sought specific performance and in the alternative, damages in the sum of $2,020,000.

RxP counterclaimed seeking a declaration that the agreement was not an enforceable contract. RxP also pleaded the affirmative defenses of failure to satisfy the statute of frauds, failure of consideration, failure to satisfy conditions precedent, repudiation by M-C, failure to provide adequate assurance of performance, and failure by M-C to perform in a commercially reasonable manner.

Pursuant to 28 U.S.C. § 636(c), the case was assigned to a United States Magistrate. The parties consented to the assignment and agreed that any appeals would be taken directly to this Court.

On April 21, 1997, RxP filed its motion for summary judgement raising the following issues: (1) the contract was unenforceable per the statute of frauds for lack of a stated quantity term; and (2) M-C was unable, as a matter of law, to prove lost profit damages because it was a new business and it failed to register an "ER-1" with the Environmental Protection Agency.

3

In opposing RxP's motion, M-C conceded the agreement lacked a quantity term, but M-C claimed that the agreement was a requirements contract and argued that requirements contracts are not subject to the statute of frauds. M-C also claimed that damages for lost profits could be recovered with respect to requirements contracts even though they may not be otherwise recoverable for lost profits allegedly lost by a new, speculative, and enviable business. M-C did not file its own motion for summary judgment, and the magistrate judge did not advise the parties he was considering any relief other than that requested by RxP.

On June 30, 1997, the magistrate judge granted RxP's motion with respect to damages holding that M-C was not entitled to recover damages for lost profits. The judge denied RxP's motion with respect to the enforcability of the contract between RxP and M-C. Without a motion before him the magistrate judge held that the contract was not one for the sale of goods. The court characterized the agreement as an option contract and held that option contracts are not subject to the UCC or the statute of frauds. The court also held that the agreement was potentially enforceable as an option contract.

A jury trial was scheduled for July 21, 1997. On July 14, 1997, the parties filed their pretrial order, which was approved and signed by the magistrate judge. The issues included: (1) whether the agreement is an enforceable contract; (2) whether the agreement is unenforceable because it lacks a quantity term; (3) whether the parties intended to form an option contract; (4) whether option contracts for the sale of goods are subject to the UCC; (5) whether the September 1995 agreement was intended to be the entire agreement between the parties; and (6) whether an option contract lacking numerous terms, including a quantity term, is capable of specific performance.

On July 21, 1997, the magistrate judge announced that a trial would not be held and that the

parties would not be allowed to present evidence concerning the contested issues.

On September 9, 1997, the judge held that the agreement entered into by the parties is an option contract whereby M-C purchased from RxP, for consideration of $10.00, the right to purchase RxP Gas Kicker for a specified price over five years from the date of first order. The magistrate judge also held that the option contract was not one for the sale of goods and was not subject to §§ 2.102, 2.106(a) and 2.201 of the Texas Business and Commercial Code.[1] The magistrate judge also held that the option contract represented the full and complete agreement between RxP and M-C and could not be supplemented by evidence of additional terms. The judge awarded M-C specific performance of the contract and attorney's fees that amounted to $32,156.25.

On October 2, 1997, RxP filed a timely appeal to this Court. On October 10, 1997, M-C cross appealed.

## II. Standard of Review

This Circuit reviews a district court's grant of summary judgment *de novo*, applying the same standard of review as would the district court. *Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998). Summary judgment evidence is viewed in the light most favorable to the party opposing the motion. *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456-58 (1992). Summary judgment is proper only when it appears that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Ellison*, 153 F.3d at 251. Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglas v. United Auto. Ass'n,* 79 F.3d 1415, 1429 (5th

---

[1]Throughout this opinion there will be specific statutory references to the Texas Business and Commerce Code, which contains the applicable provisions of the Uniform Commercial Code as adopted by the Texas legislature.

5

Cir. 1996) (en banc) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). An issue is "material" if it involves a fact that might affect the outcome of the suit under the governing law. *Id*. at 248; *Thomas v. LTV Corp*., 39 F.3d 611, 616 (5th Cir. 1994).

As a general rule, the interpretation of a contract is a question of law, not fact. *Hidden Oaks Ltd. v. City of Austin*,138 F.3d 1036, 1048 (5th Cir. 1998). "Whether a contract exists involves both questions of fact--such as the intent of the parties--and questions of law--such as whether, the facts as found constitute a contract. On appeal, a trial court's findings of fact must be accepted unless clearly erroneous or influenced by an incorrect view of the law." *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir.), *cert. denied*, 502 U.S. 984 (1992).

The magistrate judge held that the agreement was an option contract. In addition, the judge concluded that the agreement was not a contract for the sale of goods and therefore was not subject to the Texas Business and Commercial Code section 2.201. Both of these legal conclusions are subject to *de novo* review. *Id.*

### III. Discussion

There are four issues that are presented before this Court: (1) whether the magistrate judge was correct in holding that the agreement was an option contract not for the sale of goods and therefore not subject to the UCC; (2) whether RxP received proper notice of the magistrate judge's granting *sua sponte* summary judgment; (3) whether attorneys' fees were properly awarded; and (4) whether lost profits were properly denied. We will only address the first issue because we hold that the magistrate judge was incorrect in ruling that the Texas Business and Commercial Code does not apply to this case.

M-C asserts that the agreement is a valid and unambiguous enforceable contract. First, it

6

supports the trial court's finding that the agreement is an enforceable option contract not governed by the UCC. In addit ion, M-C argues that the writing is an enforceable requirements contract governed by the UCC. Finally, M-C argues that the agreement is a valid distributorship agreement governed by the UCC.

RxP argues that option contracts are governed by the UCC. In the case at bar, however, the written agreement between M-C and RxP created an unenforceable option contract because it failed to satisfy the UCC statute of frauds by failing to state a quantity term. RxP argues that a quantity term is essential to form a valid option contract and therefore the writing is unenforceable. RxP ardently argues that the lower court's ruling, that option contracts are not governed by the UCC, is erroneous and unsupported by case law.

## Texas Business & Commercial Code

Chapter 2 of the UCC applies to all transactions in goods. TEX. BUS.& COM. CODE ANN. §2.102. A contract for the sale of goods includes "both a present sale of goods and a contract to sell goods at a future time." TEX. BUS.& COM. CODE ANN. §2.106(a). Therefore, rights of parties are not effected by whether the transaction is one for a present sale of goods or a contract relating to the future. *See Id.*

The UCC unequivocally states that a contract involving the sale of goods is not enforceable without a quantity term. *See* TEX. BUS.& COM. CODE ANN. §2.201. Thus, the only term that must appear in a writing to support an enforceable contract for the sale of goods is the quantity term. TEX. BUS.& COM. CODE ANN. §2.201cmt. 1. Section 2.201(a) states:

Except as otherwise provided in this section a contract for the sale of goods for the

price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but *the contract is not enforceable under this paragraph beyond the **quantity** of goods shown in such writing.*

(Emphasis added). However, a contract which fails to satisfy the requirements of section 2.201(a) but which is valid in other respects is enforceable pursuant to section 2.201(c):

(1) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(2) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted.

M-C maintains that although the agreement lacks a quantity term, it still does not violate the statute of frauds because the agreement is within the exception for specifically manufactured goods under 2.201(c)(1). Although M-C's contention may have merit, this issue was not raised in the magistrate court and therefore is waived. *See Illinois Central Gulf R. Co. v. R.R. Land, Inc.*, 988 F.2d 1397, 1407 (5th Cir. 1993).

M-C also claims that Texas Business and Commercial Code §2.201(c)(2) applies because RxP admitted the existence of a contract through its pleadings and live testimony. RxP states that much of the evidence that M-C relies on was not before the magistrate judge when he considered RxP's motion for summary judgment. In addition, RxP maintains that the evidence merely confirms that the parties were working toward an anticipated business relationship and does not confirm the existence

8

of a contract. After reviewing the record we find that RxP's references to the agreement did not constitute an admission under 2.201(c)(2). Therefore, this section is inapplicable to the facts of this case. Thus, because a quantity term was not sufficently stated in the agreement we hold that the statute of frauds is not satisfied.

### *Characterization of the Agreement*

We will not address whether the agreement is a valid distributorship agreement because M-C failed to a present this issue before the magistrate court. Consequently, M-C has waived that issue. *See Illinois Central Gulf R. Co.*, 988 F.2d at 1407.

It is clearly established that the UCC applies to both option and requirements contracts. *See W.H. McCrory & Co., Inc. v. Contractors Equipment and Supply Co.*, 691 S.W.2d 717 (Tex.App.-Austin 1985, writ ref'd n.r.e)(holding that an option contract to purchase a forklift must satisfy the statute of frauds); *see Eastern Dental Corp. v. Isaac Masel Co., Inc.*, 502 F.Supp. 1354 (E.D.Pa.1980)(applying the statute of frauds requirement of a quantity term to requirements contracts). Therefore, the classification of the agreement as an option or requirements contract is irrelevant. This is because either characterization will result in the agreement violating the statute of frauds because the agreement fails to state a quantity term. Nevertheless, this Court classifies the agreement as an option contract.

The agreement cannot be characterized as a requirements contract. An essential element of a requirements contract is the promise of the buyer to purchase exclusively from the seller either the buyer's entire requirements or up to a specified amount. *Mid-South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117, 1120 (5th Cir. 1985). Without such a promise by the buyer, a requirements contract

9

fails for lack of consideration. *Id.* at 1121. A requirements contract is a contract that, although it does not establish the amount that a buyer must purchase from the seller, prohibits the buyer from purchasing from other sellers. *See Cardiovascular Services, Inc. v. West Houston Health Care Group, Inc.,* 1995 WL 523615 (Tex.App.-Hous. [1 Dist.] 1995). In this case, however, the agreement's language fails to contain a promise of exclusivity or demonstrate in any fashion that M-C was restricted from purchasing from other sellers.

In addition, in output and requirements contracts, the quantity of goods to be delivered under the contract is determined by the good faith output or requirements of the parties. This does not mean, however, that the statute of frauds' requirement of a quantity term is obviated since the inclusion of a quantity term is a mandatory requirement under the UCC. *Eastern Dental Corp.*, 502 F.Supp. at 1363-64. While the quantity term in requirements contracts need not be numerically stated, there must be some writing which indicates that the quantity to be delivered under the contract is a party's requirements or output. *Id.* at 1364. "The writing must specify the quantity of goods to be sold. . . . For a requirements contract, the quantity to be specified is "a party's requirements." *Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F.Supp. 1084, 1090 (D.Conn.1995). The language in the agreement does not specify a quantity of M-C's requirements or RxP's output. Thus, we find that the correct classification of the agreement cannot be as a requirements contract.

We hold that the agreement is properly characterized as an option contract. An option contract has two components: 1) the underlying contract which is not binding until accepted; and 2) the covenant to hold open to the optionee the opportunity to accept. *Casa El Sol-Acapulco, S.A. v. Fontenot*, 919 S.W.2d 709, 717 n.9 (Tex. App.-Houston. [14 Dist.] 1996, writ dism'd by agr.). "The purpose of a purchase option is to give the optionee the right to purchase, at his election, within

an agreed period, at a named price, which presumably was considered satisfactory by the optionor in case the option should be exercised at any time during the option term."[2] *Maxwell v. Lake*, 674 S.W.2d 795, 798 (Tex. App.-Dallas, 1984). To be binding, an option contract must: (1) be signed by the offeror; (2) recite a purported consideration for making the offer; and (3) propose an exchange on fair terms within a reasonable time. RESTATEMENT (SECOND) CONTRACTS §87 (1979). We find that the agreement should be classified as an option contract because it was (1) was signed by RxP, the offeror; (2) the agreement states a consideration of the sum of ten dollars for making the offer; and (3) M-C had the option to purchase RxP Gas Kicker for five years from the date of the first order at the price of $1.25 per 2.5 ounce bottles and $1,280 per drum. We find these terms to be fair and within a reasonable time. Therefore, we conclude that the correct classification of the agreement is an option contract.

Although we agree with the magistrate judge in his conclusion that the agreement was properly characterized as an option contract, we find that there is no authority to support the proposition that the UCC does not apply to option contracts. The magistrate judge incorrectly cites *Sinclair Refining Co. v. Allbritton*, 147 Tex. 468, 218 S.W.2d 185 (Tex. 1949), in support of his holding. As RxP notes, the UCC became effective in Texas as of June 30, 1966, but *Sinclair* was decided almost eighteen years before that date. *Sinclair* involved a dispute between a lessee and

---

[2] The following are illustrations of option contracts:
1. A promises B under seal or in return for $100 paid or promised by B that A will sell B 100 shares of stock in a specified corporation for $5,000 at any time within thirty days that B selects. There is an option contract under which B has an option; and
2. A offers to sell B Blackacre for $5,000 at any time within thirty days. Subsequently A promises under seal or in return for $100 paid or promised by B that the offer will not be revoked. There is an option contract under which B has an option. RESTATEMENT (SECOND) CONTRACTS §25 (1979).

11

lessor over a purchase option clause in an oil and gas lease and is not applicable to our case.

Furthermore, Texas courts apply the UCC when dealing with option contracts. The Austin Court of Appeals held that an option to purchase a forklift was unenforceable because it failed to satisfy the statute of frauds. *W.H. McCrory & Co., Inc.,* 691 S.W.2d at 721. The option, which was connected to an equipment lease, was characterized as a contract for the sale of goods. *Id.* at 720. The court held that the contract did not comply with Texas Business and Commercial Code § 2.201. *Id.* at 719-720. In addition, Texas courts have also held that option contracts involving the sale of securities must satisfy the statute of frauds. *Kenney v. Porter,* 604 S.W.2d 297, 302-04 (Tex.Civ.App.-Corpus Christi, 1980 writ ref'd n.r.e).

Moreover, other jurisdictions hold that option contracts are subject to the statute of frauds. Option contracts for the sale of land or personal property must satisfy the statute of frauds. *See In re Air Vermont, Inc.*, 44 B.R. 446, 450 (Bankr.D.Vt. 1984). Also, UCC § 2-201 has been held applicable to an alleged option contract involving the sale of an airplane. *McCollum Aviation, Inc. v. CIM Associates, Inc.*, 446 F.Supp. 511, 513 (S.D.Fla.1978).

### IV. Conclusion

Although this Court would classify the agreement between RxP and M-C as an option contract, the agreement fails to suffcently state a quantity term and therefore does not satisfy the statute of frauds. Thus, there is no valid and enforceable contract between M-C and RxP. Accordingly, this Court concludes that the magistrate judge's decision is incorrect and is hereby REVERSED and RENDERED.