**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 01-10385
Summary Calendar
_____

FFP MARKETING COMPANY, INC.,

                                                        Plaintiff-Appellant,

versus

THE MEDALLION COMPANY, INC.,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:99-CV-665-P)

_____

December 19, 2001
Before DAVIS, BENAVIDES, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Plaintiff, FFP Marketing Company, Inc. ("FFP"), appeals the district court's grant of summary

judgment in favor of the Medallion Company, Inc. ("Medallion"). For the following reasons, we

affirm.

FACTUAL AND PROCEDURAL HISTORY

FFP is a Texas-based marketing company active in convenience store and truck stop

operations, fuel distribution, and money order sales. Medallion is a Virginia corporation that

[*]Pursuant to CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstance set forth in 5th CIR. R. 47.5.4.

manufactures over twenty-five types of discount cigarettes and sells them to licensed wholesalers across the country. In the summer of 1998, FFP sought to enter into a long-term pricing agreement with a supplier of discount cigarettes thereby rebuilding its wholesale business. FFP was referred to Medallion. Thereafter, Wayne Rice ("Rice"), who was then the Chief Executive Officer of Medallion, contacted FFP and a meeting was arranged between the two companies in Chicago. At the meeting, Rice presented representatives of FFP with general sales information concerning the many different brands offered by Medallion, including ordering, shipping, pricing, and insurance information.

Following the Chicago meeting, Rice had several telephone conversations with Mike Triantafellou ("Triantafellou"), FFP's Vice President of Retail Operations. On November 2, 1998, Rice sent a letter (the "November 2 letter") to Triantafellou relaying Medallion's price information for the year 1999. After having additional conversations, on November 3, 1998, Rice sent a second letter (the "November 3 letter") to Triantafellou outlining lower price information for FFP for a five year period. FFP contends that this November 3 letter, in addition to the prior conversations between the two companies, formed an offer to enter into a contract, which it accepted on November 24, 1998.

On November 21, 1998, major cigarette manufacturers and the Offices of Attorney General in forty-six (46) states signed the Master Tobacco Settlement Agreement (the "Settlement Agreement"). A few days after the Settlement Agreement was announced, Rice received a copy of the November 3 letter from Triantafellou indicating that it was signed and accepted by FFP. After receiving the November 3 letter, Medallion did not return any of FFP's calls and did not respond to any letters from FFP's counsel.

2

FFP filed a lawsuit against Medallion alleging fraud and breach of contract, or in the alternative, anticipatory breach.[1] FFP also sought a declaratory judgment to determine the parties rights and duties under the alleged contract. Medallion then filed a motion for summary judgment. Medallion contended that no contract existed under Texas law for lack of a quantity term in the November 3 letter and lack of consideration. Moreover, Medallion asserted that even though it denies a contract exists, it is still willing to honor the price stated in the November 3 letter plus an additional fee to account for the industry price increase as a result of the Settlement Agreement. Finding that FFP failed to demonstrate a material dispute of fact with respect to its fraud and contract claims, the district court granted summary judgment in favor of Medallion. This appeal followed. FFP asserts that the district court erred in finding that no contract existed and that FFP did not have a colorable cause of action for fraud.

SUMMARY JUDGMENT

We review a grant of summary judgment de novo. Exxon Corp. v. Baton Rouge Oil, 77 F.3d 850, 853 (5th Cir. 1996). Summary judgment is proper when the pleadings and any other evidence, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex v. Cartrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment may be discharged by pointing out to the district court that there is a lack of evidence to support the nonmoving party's case. Id. at 325. Once the moving party has carried its initial burden, the nonmoving party must come forward with specific facts showing

---

[1]FFP also requested that if the district court did not grant monetary damages for either breach of contract or anticipatory repudiation, that it grant specific performance.

that there is a genuine issue for trial.  <u>Matushita Elec. Indus. Co. . v. Zenith Radio Corp.</u>, 475 U.S.

574, 587  (1986).

DISCUSSION

I.      Contract

Under Texas law, the Uniform Commercial Code (UCC)–Sales (Chapter 2) governs

"transactions in goods."  The Statute of Frauds pro vision within this chapter provides, in relevant

part:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought . . . . *A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable . . . beyond the quantity of goods shown in such a writing.*

TEX. BUS. & COM. CODE ANN. § 2-201(a) (Vernon 1994) (emphasis added).

A contract does not have to contain all the material terms of the contract, however, it must

provided a quantity term.  TEX. BUS. & COM. CODE ANN. § 2.201 cmt. n.1. (Vernon 1994).  Neither

FFP nor Medallion dispute that the contract does not have a quantity term.  Instead, FFP argues that

the contract is a requirements contract and therefore, no quantity term is needed. We disagree.  In

<u>Merritt-Campbell v. RxP Product, Inc.</u>, we held that a requirements contract, like all sales contracts

subject to Texas law, must provide a quantity term.  164 F.3d 957, 963 (5th Cir. 1999).  Under Texas

law,  "a requirements contract is a contract that, although it does not establish the amount that a

buyer must purchase from the seller, prohibits the buyer from purchasing from other sellers."  <u>Id.</u>

(citing <u>Cardiovascular Services, Inc. v. W. Houston Health Care Group, Inc.</u>, No. 01-94-01075, 1995

WL 523615 at * 6 (Tex. App. Sept 7, 1995)).

4

Under a requirements contract, the amount of goods delivered is determined by the good faith requirements of the buyer. TEX. BUS. & COM.CODE ANN. § 2.306 (Vernon 1994). Thus, such a contract does not need to contain an amount in numerical terms; rather, the amount to be delivered under the contract is "a party's requirement." Merritt-Campbell, 164 F.3d at 963. This Court has held, however, that this does not mean that the statute of frauds' requirement of a quantity term does not apply since the inclusion of such a term is necessary under the UCC. Id. Consequently, although the amount to be delivered does not have to be numerically stated, there must be some writing that indicates that the amount to be delivered is the party's requirements or up to a specified quantity. Id.

In interpreting § 2-201 of the Texas Business and Commerce Code, the district court relied solely on Merritt-Campbell. FFP urges this Court to look instead to the reasoning of Reigel Fiber Corp. v. Anderson Gin Co., 512 F.2d 784 (5th Cir. 1975). That case is easily distinguishable from the case at bar. In Reigel, the contract between the two parties provided in relevant part that "[the] Buyer agrees to purchase and take delivery from Seller, and Seller agrees to sell and deliver to the Buyer, all the acceptable cotton produced during the crop year 1973 on the following acreages and none other." 512 F.2d at 789 n.7. This Court found that the parties "reduced the entire agreement to written form: the writings were signed, attested, and contained a quantity term."[1] Id. at 789. The issue in Reigel was not whether the contract contained a quantity term; rather, the question before this Court was "whether the quantity term in the agreement the parties undeniably made-as reflected

[1]In Reigel, it appears that this Court determined that the language "all the acceptable cotton produced during the crop year 1973 on the following acreages and none other" within the contract was sufficient to supply a quantity term. Reigel, 512 F.2d at 789.

5

in the signed-writings [was] too indefinite to support judicial enforcement." Id. We determined that because the contract contained a quantity term, it complied with the statute of frauds.

FFP argues that the central issue in this case is the sufficiency of the writing between FFP and Medallion to bind the parties to an open quantity contract. FFP contends that given the context in which the November 3 letter was sent, the writing was sufficient to indicate that a contract for the sale of goods had been made between the parties in compliance with the statute of frauds. Accordingly, FFP urges this Court to apply the reasoning in Reigel to the instant case and to find that the statue of frauds does not bar the enforcement of the alleged contract. The November 3 letter only evidences a proposal by Medallion to enter into a five year contract. Unlike in Reigel, FFP did not agree to purchase all of Medallion's output and Medallion did not agree to sell all of the cigarettes it manufactured to FFP. Consequently, the November 3 letter does not constitute an output contract and, thus, the reasoning in Reigel does not apply.[2]

Thus, we find that the district court properly relied on Merritt-Campbell,. Because the November 3 letter does not contain the elements outlined in Merritt-Campbell, necessary for a requirements contract, we agree with the district court that a specific quantity term must be provided. Here, there is no dispute that the alleged contract does not provide a specific quantity term. Consequently, the statute of frauds bars its enforcement.

Moreover, even assuming *arguendo*, that the November 3 letter survives the statute of frauds inquiry, it still does not constitute an enforceable requirements contract because it lacks consideration.

---

[2]FFP also urges this Court to apply the reasoning in Adevent Sys.Ltd. v. Unisys Corp., 925 F.2d 670 (3d Cir. 1991). In Adevent, the court held that a specific quantity term is not needed to satisfy the statute of frauds in a non-exclusive requirements contract. Because Texas law is clear on this issue, we declined to apply Adevent to the alleged contract in the instant case.

In a requirements contract, the buyer must promise to purchase all of buyer's requirements or a specified amount exclusively from the seller. Merritt-Campbell, 164 F.3d at 963 (citing Mid-South Packers, Inc. v. Shoney's Inc., 761 F.2d 1117, 1120 (5th Cir. 1985)). If the contract does not evidence such a promise, it must fail for lack of consideration. Id. (citing Mid-South Packers, Inc. 761 F.2d at 1121). In the instant case, although Triantafellou testified that "FFP was required to buy all of its needs for Medallion cigarettes" under the alleged contract, the written documentation does contain a promise by FFP to purchase cigarettes exclusively from Medallion. Therefore, we agree with the district court that because FFP failed to provide any written evidence that it made such a promise, the contract must fail for lack of consideration.

II.     Fraud

Next, FFP asserts that Medallion committed fraud by sending the November 3 letter to FFP when Medallion had no intentions of entering into a contract with FFP. Further, it argues that the testimony of Gary Hall, the president of Medallion , that he did not think anything would come from the letter, constituted evidence of misrepresentation. Medallion counters that FFP has not presented any evidence that Medallion intended to defraud FFP or actually made fraudulent statements to FFP. In order to sustain a cause of action for fraud the plaintiff must prove that

> (1) a material representation was made; (2) it was false; (3) when the speaker made it he knew that it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) he made it with the intention that it should be acted on by the party; (5) that the party acted in reliance upon it; and (6) he thereby suffered injury.

1488, Inc. v. Philsec Inc. Corp. 939 F.2d 1281, 1287 (5th Cir. 1991) (citing Stone v. Lawyers Title Ins. Corp., 554 S.W.2d 183, 185 (Tex. 1977)). Mere breach of a contract alone does not constitute fraud. Dunn v. Menassen, 913 S.W.2d 621, 625 (Tex. App. 1995). Breach of contract can rise to

7

the level of fraud "only when the failure to perform an act in the future is coupled with intent not to perform at the time of the promise that fraud occurs." Id. (citation omitted).

The district court found that FFP failed to present any evidence that Medallion had no intentions of entering into a contract with FFP. Moreover, the district court noted that Medallion is still willing to sell FFP cigarettes at the price stated in the November 3 letter plus an additional "fee" to compensate for the increase in cost as a result of the Settlement Agreement. We find that the arguments advanced by FFP are both speculative and conclusory. FFP has failed to produce any concrete evidence of fraud. Accordingly, we hold that the district court correctly determined that there was no evidence of fraud, thus, FFPs claim must fail as a matter of law.

CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

AFFIRMED.