**SUNWEST OPERATING COMPANY, L.L.C.**

v.

**CLASSIC OIL & GAS, INC., Scott L. Summers, Dove Creek Energy, Inc., and Sam B. Cobb, Jr.**

No. 6:02–CV–590.

United States District Court, E.D. Texas, Tyler Division.

Feb. 19, 2004.

Daniel James Artz of MacDonald, Schuble & Artz, Dallas, TX, for Plaintiffs.

Otis W. Carroll, Jr. of Ireland, Carroll & Kelley, Tyler, TX, for Dove Creek Energy, Inc., Scott L. Summers.

James Marvin Echols, of Saunders, Schmidt & Echols, Tyler, TX, for Classic Oil & Gas, Inc.

Charles Homer Clark of Clark, Lea & Ainsworth Tyler, TX, for Sam B. Cobb Jr.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Before the Court are Plaintiff Sunwest Operating Company, L.L.C.'s ("Sunwest") Motion for Partial Summary Judgment and Brief in Support Thereof (Document No. 28), Defendants Scott L. Summers and Dove Creek Energy, Inc.'s Motion for Summary Judgment (Document No. 30), and Defendant Sam Cobb's ("Cobb") Motion for Summary Judgment (Document No. 31), and their corresponding responses. Having carefully considered the parties' filings and the applicable law, the Court hereby **DENIES** Plaintiff Sunwest's motion in its entirety, **GRANTS** Defendants Summers and Dove Creek's motion, and **DENIES** Defendant Cobb's motion.

### BACKGROUND

On or about August 15, 1975, Joseph O. Tompkins and others executed a certain Oil, Gas and Mineral Lease (the "J. Tompkins Lease"), in favor of Little Wolf, Inc., which lease is recorded in Volume 590, Page 298 of the Deed Records of Panola County, Texas. The J. Tompkins Lease covered approximately 76.18 acres of land in Panola County, Texas, and has been continuously held by production. On or about December 9, 1975, A.T. Tompkins and J.C. Tompkins executed a certain Oil, Gas and Mineral Lease (the "A. T. Tompkins Lease"), to Floyd G. Miller, Jr., which lease is recorded in Volume 595, Page 233 of the Deed Records of Panola County, Texas. The A.T. Tompkins Lease covered approximately 64.56 acres of land in Panola County, Texas, and has been continuously held by production.

On or about April 19, 1979, a portion of the lands covered by the J. Tompkins Lease and the A.T. Tompkins Lease was incorporated in a gas unit formed as the

Velma Daniels Gas Unit. It is undisputed that a 20 acre tract of land covered by the J. Tompkins Lease and a 27.01 acre tract of land covered by the A.T. Tompkins Lease were not included within the Velma Daniels Gas Unit (the "Excluded Acreage"). This gas unit was recorded in Volume 655, Page 4 of the Deed Records of Panola County, Texas.

By various assignments thereafter, Snyder Oil Corporation ("Snyder") acquired a working interest in the J. Tompkins Lease and the A.T. Tompkins Lease. The working interest owned by Snyder was subject to a Net Profits Interest which had been granted by Snyder's Predecessor in Interest, Graham Properties, Inc., to Texas American Bank/Fort Worth N.A., by a certain Conveyance of Net Profits Overriding Royalty Interest, dated June 16, 1988, and recorded in Volume 824, Page 352 of the Deed Records of Panola County, Texas.

On or about February 8, 1995, Snyder, as Seller, entered into a purchase agreement with Enron Oil & Gas Co., as Purchaser, covering certain oil and gas properties, including lands covered by the J. Tompkins Lease and the A.T. Tompkins Lease. On or about that same day, February 8, 1995, Snyder and Bank One Texas, N.A., as Successor in Interest to Texas American Bank/Fort Worth N.A., executed an Assignment and Bill of Sale of Oil, Gas and Mineral Leases, in favor of Enron Oil & Gas Co. (the "Snyder Assignment"). The Snyder Assignment agreed to "assign all right, title and interest of Assignor in and to the Properties to Assignee" and was recorded in Volume 944, Page 507 of the Deed Records of Panola County, Texas.

On or about August 9, 1995, Enron Oil & Gas Co., as Assignor, executed a certain Assignment and Bill of Sale (the "Enron Assignment") to Sunwest, as Assignee. Enron agreed to assign to Sunwest all right, title and interest to the Properties it had an interest in. The Enron Assignment is recorded in Volume 957, Page 748 of the Deed Records of Panola County, Texas and includes an Exhibit A and an Exhibit B identical to that in the Snyder Assignment.

On or about April 12, 2002, Sunwest entered into a farmout agreement in favor of Classic Oil & Gas, Inc. Pursuant to the Classic farmout agreement, on or about October 24, 2002, Sunwest executed a certain Assignment of Oil, Gas, and Mineral Lease, in favor of Classic Oil & Gas, Inc. (the "Sunwest Assignment"). The Sunwest Assignment was recorded in Volume 1169, Page 216 of the Deed Records of Panola County, Texas. Thereafter, Classic drilled the Tompkins Trust Gas Unit # 1 well on the property Sunwest alleges is covered by the farmout agreement, and that well began producing. Sunwest claims that the Excluded Acreage is included within the Tompkins Trust Gas Unit. According to Sunwest, Classic refused to pay Sunwest the overriding royalty which it claimed was owed.

On or about December 17, 2002, Sunwest filed suit in this Court, seeking declaratory judgment that Sunwest is the owner of the disputed acreage.[1] Sunwest posits that the Snyder Assignment validly assigned to Enron all of Snyder's working interest in the land covered by the J. Tompkins Lease and the A.T. Tompkins

---

1. Additionally, Sunwest asserted claims of trespass to try title, slander of title, tortious interference with contractual relations, and willful and malicious conduct as to Defendants Summers and Dove Creek, breach of contract as to Defendant Classic, and negligent misrepresentation as to Defendant Cobb.

Only the declaratory judgment regarding the ownership of the disputed acreage and the negligent misrepresentation claims are presently before the Court, and this Memorandum Opinion and Order does not address the other causes of action.

Lease, including the Excluded Acreage. The Enron Assignment then validly assigned to Sunwest all of Enron's working interest in the lands covered by the J. Tompkins Lease and the A.T. Tompkins Lease, including the Excluded Acreage. Sunwest, then, was (prior to the Farmout Agreement with Classic Oil & Gas Co.) the successor in interest to Snyder's working interest in the Excluded Acreage. Accordingly, Plaintiff requests the Court to enter judgment on its behalf and declare that Plaintiff Sunwest is the owner of a .0134917 Overriding Royalty Interest in the Tompkins Trust Gas Unit. Defendants Dove Creek Energy, Inc. and Scott L. Summers filed an answer and counterclaim, requesting a declaratory judgment that the assignment from Enron to Sunwest conveyed only the oil and gas leasehold rights created by those oil and gas leases within the Velma Daniels Gas Unit and did not convey an interest in the Excluded Acreage.

Separate and distinct from the above issue, Sunwest also asks the Court to determine whether a letter written by Defendant Cobb to Sunwest constituted a negligent misrepresentation for which Cobb is liable to Sunwest under controlling Texas law. Sunwest asks the Court to review the letter from Cobb to Sunwest and determine, as a matter of law, whether that letter included a false representation, whether Cobb was guilty of failing to exercise reasonable care in making that representation, and whether Sunwest suffered damages as a result of justifiable reliance upon such misrepresentation.

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt–Campbell, Inc. v. RxP Products, Inc.,* 164 F.3d 957, 961 (5th Cir.1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Merritt–Campbell, Inc.,* 164 F.3d at 961. When ruling on a motion for summary judgment, the Court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Merritt–Campbell, Inc.,* 164 F.3d at 961.

The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little,* 37 F.3d at 1075. If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1180 (5th Cir.1996); *Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1046–47 (5th Cir.1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical

doubt as to the facts, or a mere scintilla of evidence. *Matsushita,* 475 U.S. at 585, 106 S.Ct. 1348; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075.

## DISCUSSION

### Issue Presented

■ The first issue presented to the Court is whether or not, under a proper construction of the assignments relating to the aforementioned oil and gas properties, Sunwest acquired the working interest of Snyder in certain tracts of land, namely the Excluded Acreage out of the J. Tompkins Lease and the A.T. Tompkins lease, so that Sunwest is the owner of an overriding royalty interest of 0.0134917 in the Tompkins Trust Gas Unit. This issue requires the construction of recorded assignments which conveyed interests in oil and gas properties, specifically the Snyder and Enron Assignments. There is no contention that the assignments at issue are ambiguous. Indeed, in a status conference held before the Court on January 9, 2004, the parties stipulated that there are no allegations of ambiguity so that the Court should construe the assignments as a matter of law.

### Applicable Law

■ The court's primary duty when construing such an instrument is to ascertain the intent of the parties from all of the language in the deed by a fundamental rule of construction known as the 'four corners' rule. *Luckel v. White,* 819 S.W.2d 459, 461 (1991) (citing *Garrett v. Dils Co.,* 157 Tex. 92, 299 S.W.2d 904, 906 (1957)). The court, when seeking to ascertain the intention of the parties, attempts to harmonize all parts of the deed. *Id.* (citing *Altman v. Blake,* 712 S.W.2d 117, 118 (Tex.1986)). Even if different parts of the deed appear contradictory or inconsistent, the court must strive to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Id.* The court is not to rely on labels given to clauses, such as "granting," "warranty," "habendum," and "future lease," but must read the instrument as a whole to determine the intent of the parties. *Id.* (overruling *Alford v. Krum,* 671 S.W.2d 870 (Tex.1984), which had elevated the granting clause over another provision in the conveying instrument and had given it controlling weight).

■ Moreover, as a general rule, several instruments comprising a single transaction are to be construed together. *Jones v. Fuller,* 856 S.W.2d 597, 601 (Tex.App.-Waco 1993, writ denied) (citing *Terrell v. Graham,* 576 S.W.2d 610, 611 (Tex.1979) (acknowledging that two instruments that were both executed at the same time, between the same parties and related to the same tract of land should be considered together and construed as one transaction)). Likewise, instruments that are shown to be component parts of a single transaction are read together. *Id.* (citing *Rudes v. Field,* 146 Tex. 133, 204 S.W.2d 5, 7 (1947) (noting that separate instruments contemporaneously executed as part of the same transaction and relating to the same subject matter may be construed together as a single instrument)).

### Interpreting the Assignments

Here, the existence of the J. Tompkins Lease and A.T. Tompkins Lease is undisputed. Likewise, it is undisputed that portions of the land covered by the J. Tompkins Lease and A.T. Tompkins Lease were dedicated to the Velma Daniels Gas Unit. There is also no dispute that a 20 acre tract out of the J. Tompkins Lease and a 27.01 acre tract out of the A.T. Tompkins Lease were not included in the Velma Daniels Gas Unit. Further, it is undisputed that a substantial portion of the working interests under the J. Tompkins Lease and

the A.T. Tompkins Lease were conveyed to Snyder. It is undisputed that Snyder conveyed all of its interests in the leases to Enron, and that subsequently, Enron conveyed those very same properties to Sunwest. The question presented in this case is whether or not the Excluded Acreage was part of that conveyance. Sunwest submits that under a proper application of the "four corners rule," the Snyder Assignment and the Enron Assignment did in fact transfer all of Snyder's leasehold interests in the Excluded Acreage to Sunwest so that Sunwest is entitled to summary judgment on this issue as a matter of law.

The Recitals in both the Snyder and Enron Assignments are identical in all material respects, and read specifically as follows:

1. Assignor owns an interest in the oil and gas leases described on Exhibit "A" attached hereto and made a part hereof (the "Leases") which pertain to the Lands described in Exhibit A (the "Lands")....

The Leases, Lands, Equipment, Contracts, Production and Data are all collectively referred to as the "Properties".

6. Assignor agrees to assign all right, title and interest of Assignor in and to the Properties to assignee in order to vest Assignee with title in and to the Properties.

Likewise, the granting clauses in both assignments are identical:

### CONVEYANCE

For one hundred dollars and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby GRANT, BARGAIN, SELL, TRANSFER, ASSIGN, and CONVEY to Assignee, all of Assignor's right, title and interest, including any and all overriding royalty interest, in and to the Proper-

ties, to have and to hold unto Assignee, its successors and assigns, forever.

The same Exhibit A that was attached to the assignment between Snyder and Enron was also attached to the assignment from Enron to Sunwest. Exhibits A to both the Snyder and Enron Assignments contain a descriptive paragraph of the conveyed interest:

### BECKVILLE

Panola County, Tecas

### VELMA DANIELS GAS UNIT
### NO. 1, 2, 3, 4, 5, 6

Seller's interest in and to acreage allocated to the Velma Daniels Gas Unit No. 1, more particularly described as 641.76 acres, more or less, out of the Thomas M. Scott Survey, A–594, and the Joseph Spencer Survey, A–590, Panola County, Texas, more particularly described in Gas Unit Designation for the Velma Daniels No. 1, a counterpart of which is recorded in Volume 655, Page 13 of the Deed Records of Panola County, Texas, as amended and supplemented.

[Thirteen Oil and Gas Leases follow, described by recording information, and acreage covered by each; the 76.18 acre J. Tompkins Lease and the 64.56 acre A.T. Tompkins Lease are specifically included in those 13 described leases.]

Sunwest argues that the foregoing paragraph does not expressly limit the "Lands" being conveyed to only the lands lying within the Velma Daniels Gas Unit. Sunwest argues that the Recitals broadly define "Properties" to include *all* the interest in the lands listed on Exhibit A. Sunwest further argues that the Excluded Acreage was never expressly or implicitly excluded from the description of the leases, either in Exhibit A to the Snyder Assignment or in the body of the assignment itself. Because the tracts were listed in their entire-

ty on Exhibit A, Sunwest contends the "Property" that was conveyed from Snyder consisted of the entire acreage, including the Excluded Acreage. Alternatively, Sunwest argues that, assuming the paragraph heading describing the Velma Daniels Gas Unit does limit the term "Lands," as defined in the assignments, to those lands within the Velma Daniels Gas Unit, this does not justify a determination that the Snyder Assignment did not convey to Enron and, thus, to Sunwest all of the interests in Snyder in both the "Leases." The Court disagrees with Sunwest.

Contrary to Sunwest's argument, the Snyder and Enron Assignments conveyed only those portions of the J. Tompkins Lease and A.T. Tompkins Lease that were included in the Velma Daniels Gas Unit, and the assignments do not include the excluded acreage. None of the other gas units described in Exhibits A, including the Tompkins Gas Unit at issue, reference or include any portions of either the J. Tompkins Lease or the A.T. Tompkins Lease. Exhibits B to the assignments reference those wells included in the various gas and oil units described in Exhibits A. The only wells relating to either the J. Tompkins Lease or the A.T. Tompkins Lease listed on Exhibits B are the Daniels Gas Units. All of the other wells are included in other gas or oil units which do not include any portion of the J. Tompkins Lease or the A.T. Tompkins Lease. In sum, the record does not show the Excluded Acreage as part of the Tompkins Gas Unit, or any of the other gas or oil units, on either Exhibits A or Exhibits B to the assignments. Simply put, Snyder could convey only what interest it held, and the Excluded Acreage was not part of that interest.

Furthermore, Sunwest's interpretation of the term "Properties" is too broad because the language of the Snyder Assignment itself limits the conveyance to *the*

*interest* in the oil and gas leases which pertain to the lands described in Exhibit A. Sunwest ignores another provision of Exhibit A that caveats that "[t]he above-described interests are *subject to* all valid, existing instruments of record affecting same and to all applicable unrecorded letter agreements, operating agreements, gas purchase contracts and other agreements relative to the marketing of production from said lands." It has already been established that the Deed Records of Panola County, Texas, specifically Volume 655, Page 4, recorded the earlier formation of the Velma Daniels Gas Unit. Moreover, the existing instruments of record show that the 20 acre tract of land covered by the J. Tompkins Lease and the 27 acre tract of land covered by the A.T. Tompkins Lease were *not* included within the Velma Daniels Gas Unit.

■ Sunwest then points the Court to the language used by Bank One Texas, as successor to Texas American Bank/Fort Worth N.A. under the Net Profits Conveyance, in assigning its interests. Bank One Texas joined in the Snyder Assignment to convey its interest in the Net Profits Conveyance. The Court notes that such extraneous evidence of the intent of the parties is not necessary for consideration. Extraneous evidence relating to the parties' intent with respect to a contract is not admissible absent an ambiguity. *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). In this case, the parties have already stipulated that there is no ambiguity. However, even if the Court were to construe the Net Profits Conveyance, the result is the same.

In the Net Profits Conveyance, Graham Properties, Inc, Snyder's predecessor in title, conveyed to Texas American Bank/Fort Worth N.A. a "net profits interest" of 75% interest in all the oil, gas or mineral properties described on Annex A–1 at-

tached thereto. Annex A–1 to the Net Profits Conveyance lists, in almost identical manner to Exhibit A of the Snyder and Enron Assignments, the J. Tompkins Lease and the A.T. Tompkins Lease. While Sunwest focuses on the phrase, "Seller's interest in and to the Leases *and* the Velma Daniels Gas Unit No. 1, more particularly described as 641.76 acres more or less out of the Tomas M. Scott Survey, . . .", with the emphasis on the word "and," the Court thinks the better construction should focus on the words "Seller's *interest in and to* [the leases and the gas unit]." According to Sunwest, that very same paragraph notes that the interest being conveyed is "including, *but not limited to,* all of Seller's interest in and to the following described leases: [a listing of the various leases including a description of the J. Tompkins Lease and the A.T. Tompkins Lease]," again with the emphasis on "but not limited to" instead of on "Seller's *interest in and to* [the leases and the gas unit]." Interestingly, once again, Sunwest omits the fact that Annex A includes the very same provision as Exhibits A to the Snyder and Enron Assignments, that "[t]he above-described interests are *subject to* all valid, existing instruments of record affecting same and to all applicable unrecorded letter agreements, operating agreements, gas purchase contracts and other agreements relative to the marketing of production from said lands." Snyder could not convey an interest it did not have, and neither could Sunwest.

The Court is also mindful that the Snyder Assignment referenced the same Exhibits A and B that were attached to the original Snyder/Enron Purchase Agreement ("Purchase Agreement") and that the Snyder Assignment itself was attached as Exhibit C to the same Purchase Agreement. Therefore, because the Purchase Agreement was made at the same time as the Snyder Assignment, by the same parties, and dealt with the same land, the Purchase Agreement should be considered in construing the assignments. The Recital to the Purchase Agreement reads:

> A. Seller is the owner of interest in the following:
>
> > (a) The oil and gas leases described on Exhibit "A" insofar as they cover the lands described on Exhibit "A" (the "Lands"), which leases are called the "Leases", and the oil and gas wells on the Leases and identified in Exhibit "B" (the "Wells"); . . .
>
> The Leases, Lands, Wells, Equipment, Contracts, Production and Date are collectively called the "Properties".
>
> B. Buyer wishes to purchase and Seller wishes to sell, all of Seller's right, title and interest in the Properties.

Snyder conveyed all of its right, title and interest to the "Properties" as defined by the Purchase Agreement. The term "Properties" was expressly defined in the recitals of the Purchase Agreement as being only those "oil and gas leases described on Exhibit 'A' *insofar as they cover the lands described on Exhibit 'A'.*" Exhibit A to the Purchase Agreement identified the various oil and gas leases included in the Velma Daniels Gas Units and specifically referenced the 76.18 acre J. Tompkins Lease and the 64.56 acre A.T. Tompkins Lease. The Purchase Agreement includes the very same provision as Exhibits A to the Snyder and Enron Assignments, that "[t]he above-described interests are *subject to* all valid, existing instruments of record affecting same and to all applicable unrecorded letter agreements, operating agreements, gas purchase contracts and other agreements relative to the marketing of production from said lands." Thus, the "Properties" as defined were only those portions of the J. Tompkins Lease and the A.T. Tompkins Lease that were included in the Velma

Daniels Gas Unit, and did not include the Excluded Acreage.

Considering that the language in the Purchase Agreement accords with that of the subsequent assignments, and that a copy of the Snyder Assignment was attached as Exhibit C to the Purchase Agreement, the Court has little trouble ascertaining that Snyder meant only to transfer the interest it had, which did not include the Excluded Acreage. Likewise, Enron could then convey to Sunwest no more than it had acquired from Snyder. In sum, the Court finds that Sunwest did not acquire the working interest of Snyder in the Excluded Acreage out of the J. Tompkins Lease and the A.T. Tompkins Lease, so that Sunwest is not the owner of an overriding royalty interest of 0.0134917 in the Tompkins Trust Gas Unit.

*Negligent Misrepresentation*

The second issue presented to the Court, as framed by Sunwest, is whether Defendant Cobb is liable for negligent misrepresentation arising out of his Letter of October 9, 2001, to Gregory J. Morton, in which he represented to Sunwest that execution of certain lease amendments would "eliminate any question as to the validity of your leasehold interest." Sunwest claims the fact that the parties are currently engaged in litigation supports its contentions. The Court finds this argument unpersuasive. Likewise, having reviewed Cobb's motion for summary judgment on this claim, the Court finds that Cobb has failed to prove his entitlement to judgment as a matter of law.

### CONCLUSION

For the above reasons, the Court hereby **DENIES** Plaintiff Sunwest's Motion for Partial Summary Judgment as to both the ownership and negligent misrepresentation issues, **GRANTS** Defendant Scott L. Summers and Dove Creek Energy, Inc.'s Motion for Summary Judgment as a matter of

law as to the ownership of the disputed Excluded Acreage, and **DENIES** Defendant Sam Cobb's Motion for Summary Judgment as to the negligent misrepresentation issue.

It is **SO ORDERED.**