Opinion filed January 30, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00071-CV

_____

## BAYLOR COUNTY SPECIAL UTILITY DISTRICT,
### Appellant/Cross-Appellee

## V.

## CITY OF SEYMOUR, TEXAS,
### Appellee/Cross-Appellant

**On Appeal from the 50th District Court**

**Knox County, Texas**

**Trial Court Cause No. 10378**

## O P I N I O N

Appellee and Cross-Appellant City of Seymour, Texas, (Seymour) filed a breach-of-contract suit against Appellant and Cross-Appellee Baylor County Special Utility District (Baylor). According to the petition, Seymour and Baylor are parties to a contract wherein Baylor would purchase "all water required" from Seymour.

But, in 2022, Baylor began purchasing water from a third party. Seymour filed suit seeking damages and requesting a declaratory judgment, injunctive relief, and attorney's fees. Baylor, claiming governmental immunity, filed a plea to the jurisdiction. The trial court granted Baylor's plea in part and denied it in part. Specifically, the trial court granted Baylor's plea as to Seymour's requested declaratory judgment, injunctive relief, and attorney's fees but denied Baylor's plea with respect to Seymour's first cause of action for breach of contract, which was "based on the parties' contract allegedly being a 'Requirements Contract.'" Baylor and Seymour each appeal portions of the trial court's order.

In a single issue, Baylor argues that the contract with Seymour is not a "requirements contract," a characterization that is essential to Seymour's breach-of-contract claim. Accordingly, Baylor contends that the trial court erred by failing to dismiss Seymour's breach-of-contract claim.

In two issues, Seymour argues that (1) as successor-in-interest to a contract that Baylor originally entered into as a private corporation, Baylor is not entitled to immunity at all; but (2) if Baylor is entitled to immunity, the trial court erred by retroactively extending that immunity to the time the contract was originally executed. We affirm in part and reverse and remand in part.

*Factual and Procedural History*

According to Seymour's original petition, in 1994 it entered into a contract with Baylor Water Supply Corporation (the Corporation), Baylor's predecessor-in-interest, wherein Seymour would issue bonds for the construction of a water treatment plant and the Corporation would buy "all water required" for its own use and distribution of treated water to its customers. Beginning in April 2015 and finalizing around October 2016, the Corporation converted to a special utility district and therefore became a governmental entity. In November 2022, Baylor began purchasing treated water from North Central Texas Municipal Water Authority.

2

In 2023, Seymour filed its original petition and application for injunctive relief. Seymour alleged that such purchases violated the contract, which required Baylor to purchase all treated water exclusively from Seymour.[1] Seymour sought a temporary and then permanent injunction that would bar Baylor from purchasing treated water from the third party. Seymour also included a request for judgment declaring that Baylor could not purchase water from the third party. Finally, Seymour sought attorney's fees.

In its answer combined with a plea to the jurisdiction, Baylor argued that it was immune from suit as a governmental entity. Specifically, Baylor argued that because the contract is not a "requirements contract," Baylor could not have breached it by purchasing treated water from a third party. Moreover, Baylor contended that any statute that would permit Seymour to recover attorney's fees was inapplicable. Baylor further asserted that Section 271.153 of the Texas Local Government Code, permitting recovery of attorney's fees in breach-of-contract cases with a local governmental unit, was limited to recovery for contracts executed after June 19, 2009, which the execution of this contract predated.

In a supplement to its plea to the jurisdiction, Baylor argued that because the contract in question is not a requirements contract, the trial court should dismiss Seymour's request for declaratory and injunctive relief. In a second supplement, Baylor established that the Corporation had converted to a special utility district, and it attached relevant documents from the Texas Commission on Environmental Quality pertaining to Baylor's conversion and an assignment of intangible business property, which included the contract with Seymour.

---

[1]Seymour also alleged that Baylor violated the contract by paying less than the contract required for treated water, altering the contract through a "handshake deal" with prior administration, and withholding crucial information related to the cost of raw water. The trial court did not dismiss these claims and they are not subject to this appeal.

The trial court granted Baylor's plea to the jurisdiction only with regard to Seymour's claims against it for attorney's fees and injunctive and declaratory relief. Both parties appealed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2024) (permitting interlocutory appeals from the grant or denial of a plea to the jurisdiction).

*Standard of Review & Applicable Law*

A. *Governmental Immunity*

Baylor, as a local governmental entity, enjoys governmental immunity. *See* TEX. LOC. GOV'T CODE ANN. § 271.151(3)(C) (West 2016) (defining "[l]ocal governmental entity" to include special purpose districts); *Lubbock Cnty. Water Control & Imp. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014). Governmental immunity includes both immunity from liability, "which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Unlike immunity from liability, immunity from suit deprives the courts of jurisdiction over the suit thereby completely barring a plaintiff's claim. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003).

Governmental immunity can be waived. *Lubbock Cnty.*, 442 S.W.3d at 300 ("Local governmental entities 'enjoy governmental immunity from suit, unless immunity is expressly waived.'") (quoting *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010)); *Tooke*, 197 S.W.3d at 332. In this regard, a governmental entity that enters into a contract "necessarily waives immunity from liability, voluntarily binding itself like any other party to the terms of agreement, but it does not waive immunity from suit." *Tooke*, 197 S.W.3d at 332. The Legislature has waived immunity from suit for local governmental entities that enter into contracts for goods and services. LOC. GOV'T § 271.151, .152; *Tooke*, 197 S.W.3d at 344–45; *see Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d

4

407, 412 (Tex. 2011) (a water supply agreement may be a contract for provision of services). However, Section 271.151's waiver of immunity limits damages to those permitted by Section 271.153(a). LOC. GOV'T § 271.153(a). Importantly, no party disputes that the agreement in this case involves goods and/or services.

B. *Plea to the Jurisdiction*

Before deciding a case, it is essential that the trial court possess subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). A plea to the jurisdiction is a dilatory plea and a proper method by which to challenge a trial court's subject-matter jurisdiction. *Id.* at 554. Whether a trial court has subject-matter jurisdiction over a case is a question of law that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)); *Ector Cnty. v. Breedlove*, 168 S.W.3d 864, 865 (Tex. App.—Eastland 2004, no pet.).

The purpose of a plea to the jurisdiction is to defeat a pleaded cause of action without reaching the merits. *Blue*, 34 S.W.3d at 554. A plea to the jurisdiction can take two forms: (1) a challenge to the plaintiff's pleadings regarding the allegations of jurisdictional facts or (2) an evidentiary challenge to the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *Miranda*, 133 S.W.3d at 226–27; *City of Merkel v. Copeland*, 561 S.W.3d 720, 723 (Tex. App.—Eastland 2018, pet. denied).

When the plea only challenges the plaintiff's pleadings, as in the case before us, we must determine if the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear and decide the case. *Miranda*, 133 S.W.3d at 226. In this regard, the plaintiff bears the burden to allege such facts that affirmatively demonstrate the trial court's subject-matter jurisdiction. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Miranda*, 133 S.W.3d at 226. We accept as true all factual allegations in the plaintiff's pleadings, construe

them liberally in the pleader's favor, and we look to the pleader's intent. *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 8 (Tex. 2015); *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Tex. Mun. League Intergovernmental Risk Pool v. City of Abilene*, 551 S.W.3d 337, 342–43 (Tex. App.—Eastland 2018, pet. dism'd). If the allegations create a fact question regarding jurisdiction, a trial court may not grant the plea because the factfinder must resolve the fact issue. *Tex. Ass'n of Sch. Bds. Risk Mgmt. Fund v. Colorado Indep. Sch. Dist.*, 660 S.W.3d 767, 771 (Tex. App.—Eastland 2023, no pet.). But if the pleader fails to raise a fact question on the jurisdictional issue, the trial court may rule on the plea as a matter of law. *Id.* If the pleadings are insufficient to establish the trial court's jurisdiction but do not affirmatively demonstrate an incurable defect in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be given an opportunity to amend. *Miranda*, 133 S.W.3d at 226–27.

C. *Requirements Contract*

A "requirements contract" is a contract wherein the buyer agrees to purchase all the specified goods it requires from the seller to the exclusion of third parties. *See* TEX. BUS. & COM. CODE ANN. § 2.306(a) (West 2009); *Alexander Oil Co. v. Fawnwood Mart, Inc.*, No. 07-00-0447-CV, 2001 WL 830438, at *3 (Tex. App.—Amarillo July 24, 2001, no pet.) (quoting *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 963 (5th Cir. 1999)). "The essential element [of a requirements contract] is the promise of the buyer to purchase exclusively from the seller either the buyer's entire requirements or up to a specified amount." *Alexander Oil*, 2001 WL 830438, at *3. Without such a promise, there is no consideration, thereby rendering the contract illusory. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance."); *see also Alexander Oil*, 2001 WL 830438, at *3.

6

"Section 2.306 [of the Texas Business and Commerce Code] renders output and requirements contracts sufficiently definite as to quantity and enforceable by reading into such contracts a quantity that is the actual good faith output or requirements of the particular party." *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 570 (Tex. 1996) (citing Bus. & Com. § 2.306 cmt. 2 ("Under this Article, a contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party.")). "[A] party who seeks to avoid performance of . . . a requirements contract by having no requirements [] may not do so in bad faith." *N. Nat. Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 608 (Tex. 1998).

If a contract is ambiguous, we must remand the case for a factfinder to determine it's meaning as a matter of fact. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 744 (Tex. 2020). Merely interpreting an agreement different does not render it ambiguous; rather, a contract is ambiguous if both parties' interpretations are reasonable. *Id.* at 743–44. If a contract is unambiguous—meaning its language creates a definite or certain legal meaning—we will determine its meaning as a matter of law. *Id.* at 744. When determining an unambiguous contract's meaning, "we look not for the parties' actual intent but *for their intent as expressed* in the written document." *Id.* (emphasis added). "We consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules." *Id.* We avoid an interpretation that would render any provision of the contract meaningless. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 416 S.W.3d 137, 144 (Tex. App.—Eastland 2013, pet. denied) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

D. *Relief for Breach of Contract*

The parties agree that this contract is governed by Chapter 271 of the Local Government Code. A local governmental entity that is authorized, either by statute

or the constitution, "to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter." LOC. GOV'T § 271.152. Section 271.153 limits the relief that a trial court may award against a local governmental entity in a breach of contract to:

> (1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

> (2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

> (3) reasonable and necessary attorney's fees that are equitable and just; and

> (4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

*Id.* § 271.153(a). However, Section 271.153(a)(3)'s permission to award attorney's fees is limited to contracts executed after June 19, 2009. Act of May 31, 2009, 81st Leg., R.S., ch. 1266, § 17, 2009 Tex. Gen. Laws 4006, 4008; *Harris Cnty. Flood Control Dist. v. Great Am. Ins. Co.*, 309 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Section 271.153 also excludes certain damages for recovery, including consequential damages, exemplary damages, and damages for unabsorbed home office overhead. LOC. GOV'T § 271.153(b). Consequential damages include lost profits. *Tooke*, 197 S.W.3d at 346. Where consequential damages are sought, no waiver of immunity exists. *Id.*

*Analysis*

A. *Baylor is Entitled to Immunity*

Because Seymour argues that Baylor is not entitled to immunity at all, we address this claim first as it would be dispositive. According to Seymour, Chapter 10 of the Texas Business Organization Code controls Baylor's liability under the contract. *See* TEX. BUS. ORGS. CODE ANN. § 10.101(a) (West 2020) ("A domestic entity may convert into a different type of domestic entity or a non-code organization by adopting a plan of conversion."). Seymour contends that Section 10.106 demonstrates that Baylor became a party to the contract in the same manner, with all rights and duties, as its predecessor in interest. *See id.* § 10.106(3) ("[A]ll liabilities and obligations of the converting entity continue to be liabilities and obligations of the converted entity in the new organizational form without impairment or diminution because of the conversion."). Baylor counters by arguing that it did not convert its entity type under Chapter 10 of the Texas Business Organizations Code, but instead did so under Chapter 65 of the Texas Water Code. *See* TEX. WATER CODE ANN. § 65.011 (West 2004) ("A special utility district may be created under and subject to the authority, conditions, and restrictions of, and is considered a conservation and reclamation district under Article XVI, Section 59, of the Texas Constitution.").

We agree with Baylor. Seymour provides no authority for the proposition that Chapter 10 of the Business Organizations Code controls the conversion of a private entity into a local governmental entity, and we have found none. On the other hand, Chapter 65 of the Texas Water Code specifically deals with the creation of a special utility district. *See id.* §§ 65.011–.023 (West 2004 & Supp. 2024). Importantly, Baylor did not file a certificate of conversion, *see* BUS. ORGS. § 10.154, but instead filed a certificate of termination with the Texas Secretary of State. *See id.* §§ 10.154, 11.101 (West Supp. 2024).

9

A waiver of immunity must be clear and unambiguous. *Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012). Baylor, as a local governmental entity is entitled to immunity. *See Kirby Lake Dev.*, 320 S.W.3d at 836. Nothing in Chapter 10 of the Texas Business Organizations Code appears to operate as a waiver of immunity, much less a clear and unambiguous waiver. *See Oncor*, 369 S.W.3d at 849. Accordingly, Seymour's first issue is overruled. We next turn to Baylor's sole issue.

B. *The Contract is a Requirements Contract*

At the outset, we note that Baylor does not contest that it is bound by the contract. Baylor's issue requires us to decide whether the contract is a requirements contract for which there is a waiver of immunity.

First, we consider whether the contract's clause that Baylor "purchase . . . all water required" establishes a requirements contract. Baylor posits that the phrase merely means that it would purchase water from Seymour so long as it does not purchase treated water from another source. Baylor reasons that the contract's plain language "all water required" should be read as "all water required *from Seymour*," meaning it only buys water from Seymour if it needs it specifically from Seymour. Baylor notes the absence of language expressly prohibiting it from purchasing treated water from any other source.

We disagree with Baylor. First, according to the contract, the purpose was to establish a water treatment facility in close proximity to Baylor's raw water source to "be of sufficient capacity to treat not only the water used by [Seymour] for resale to its customers, but also to treat the water of [Baylor] to be used for resale to its customers." *See Neuhoff*, 596 S.W.3d at 744 (directing courts to look at the express intent of the parties). Seymour was required to fund all the construction costs of the facility, which is consistent with establishing a requirements contract. *See id.*

10

Second, the language expressly states that Baylor "agrees to purchase . . . *all water required* by [Baylor] during the period of this agreement." (Emphasis added). *See Merritt-Campbell*, 164 F.3d at 963 ("For a requirements contract, the quantity to be specified is 'a party's requirements.'" (quoting *Omega Engineering, Inc. v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1090 (D. Conn. 1995))). The plain meaning of "all" is "the whole amount, quantity, or extent of." *All*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/all (last visited January 27, 2025). "Require" means "to demand as necessary or essential; have a compelling need for." *Require*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/require (last visited January 27, 2025). Section 2.306 "fills in the quantity term . . . when a contract does not unambiguously specify the quantity of the output of the seller or the requirements of the buyer." *Lenape Res.*, 925 S.W.2d at 570 (citing BUS. & COM. § 2.306(a)). And applying the meaning Baylor suggests would render the phrase meaningless and thus illusory. *See Eagle Oil & Gas*, 416 S.W.3d at 144 (directing us to avoid an interpretation that would render a provision meaningless).

Baylor points to *Merritt-Campbell* as support for its proposition, arguing that both contracts lack language requiring Baylor to "exclusively" purchase from Seymour or "prohibit[ing]" it from purchasing from third parties. *See* 164 F.3d at 963. However, in *Merritt-Campbell*, the court concluded that the contract "fails to contain a promise of exclusivity or demonstrate in *any fashion* that [appellant] was restricted from purchasing from other sellers." *Id.* (emphasis added). That is not the case here—the clause requiring Baylor buy all the water it requires from Seymour does demonstrate exclusivity. *See id.* ("While the quantity term in requirements contracts need not be numerically stated, there must be some writing which indicates that the quantity to be delivered under the contract is a party's requirements or output.").

11

Baylor also points to *Mid-American Salt, LLC v. Morris County Cooperative Pricing Council*, where the court found the contract to not be a requirements contract, stating: "It would have been easy to, for example, insert a simple provision stating, 'This is a contract for rock salt requirements and the Council covenants to purchase (and pay for) its rock salt requirements from the Contractor.'" 964 F.3d 218, 229 (3d Cir. 2020). However, that is precisely what the contract here states: Baylor agreed to purchase "all water required by [it]." Accordingly, *Mid-American* also supports our conclusion. *See id.*

Baylor points to four provisions in the contract that it argues disproves that the contract is a requirements contract:

(1) [Baylor] agrees to purchase, at the designated delivery point, all water required by [Baylor] during the period of this agreement for its own use and for the distribution of said treated water to the customers served by [Baylor]'s distribution system.

(2) [Baylor] will pay its proportionate share of the operational and maintenance costs of the water treatment facility, plus 10% of the apportioned share, for management and administrative costs, based upon its proportionate share of treated water consumption, but in no event shall [Baylor]'s share of the fixed cost of operation of the water treatment facility be less than 25% than the total of those costs (not including [Baylor]'s apportioned share of the management and administrative costs as hereinabove provided).

(3) The maximum amount of water [Baylor] may take from the water treatment facility shall not exceed 625,000 gallons per day, or 25% of the plant capacity, whichever is greater, unless a greater amount is approved in writing by [Seymour], and it is hereby agreed that [Baylor], at its option, may take said amount of water.

(4) [Seymour] will at all times operate and maintain its system in an efficient manner and will take such action as may be necessary to furnish [Baylor] with quantities of water required by [Baylor]. Temporary or partial failures to deliver water shall be remedied by [Seymour] within a reasonable time. In the event of an extended shortage of water, or if the supply of water available to [Seymour] is

otherwise diminished over an extended period of time, the supply of water to [Baylor]'s consumers shall be reduced or diminished in the same ratio or proportion as the supply to [Seymour]'s customers is reduced or diminished. Should the City Council of [Seymour] adopt water rationing upon its customers due to such extended shortage of water, [Baylor] agrees to adopt identical rationing upon [Baylor]'s customers; however, any water rationing adopted by [Seymour] due solely to any distribution problem of [Seymour], shall not be required to be adopted by [Baylor].

We disagree that the additional clauses cited by Baylor disprove that it is a requirements contract. For example, Baylor argues that the clause establishing its financial responsibility independent of the amount of water used demonstrates that they are not required to purchase "any specific proportion of its water needs from [Seymour]." However, construing the contract as a whole, this clause works to compensate Seymour for construction and operation costs of the water treatment plant, which it incurred at its own expense. *See Neuhoff*, 596 S.W.3d at 744 (directing us to harmonize the entire contract). We are unaware of any authority that provides that a requirements contract cannot include other costs independent of the quantity produced and Baylor has cited to no case law or other authority to support its argument.

Baylor next argues that the contract limits the daily amount of water that Seymour must provide to it, so it could not be a requirements contract. Again, Baylor provides no authority for this proposition. A requirements contract only requires the producer to provide the party's good faith requirements, not any and all amounts conceivable. *See Merritt-Campbell*, 164 S.W.3d at 963. It is reasonable to assume that the parties anticipated their respective needs for production when determining allocation of supply—indeed, the contract seems to indicate as much:

it is in the best interest of both [Seymour] and [Baylor] that the water treatment facility to be built by [Seymour] be of sufficient capacity to treat not only the water used by [Seymour] for resale to its customers,

13

but also to treat the water of [Baylor] to be used for resale to its customers.

*See Neuhoff*, 596 S.W.3d at 744.  Moreover, the contract directly permits the parties to alter the amount or to expand the facility based on the parties' needs.  *See id.*

Finally, Baylor argues that the provision that requires Seymour to "take such action as may be necessary to furnish [Baylor] with quantities of water required by [Baylor]," also contemplates temporary and long-term shortages.  According to Baylor, "it simply cannot be that [Baylor] must obtain all its needed water from [Seymour]'s treatment plant when [Seymour] cannot even promise that it will have the water to meet those needs."  Baylor further contends that Seymour "expressly acknowledges [that] [Seymour] may not fulfill [Baylor]'s water needs, [which] further prove[s] that the contract is not a requirements contract."  Baylor again provides no authority to support its proposition.  However, we do not believe that contemplating supply-chain shortages necessarily renders the contract something other than a requirements contract.  *See Neuhoff*, 596 S.W.3d at 744.  Importantly, Baylor presented no evidence that Seymour could not fulfill its water supply requirements or that its acquisition of water from other sources was due to Seymour's inability to provide same.  We conclude that the contract is a requirements contract.  *See Alexander Oil*, 2001 WL 830438, at *3.  Consequently, Seymour may seek recovery, as statutorily permitted,[2] for a breach of same.

C. *Seymour Claims Outside of the Statutory Waiver of Jurisdiction*

While waiver of immunity exists regarding the requirements contract at issue, that is not the end of our analysis because that waiver of immunity is statutorily limited in scope.  Statutes are strictly construed as not waiving immunity unless that

---

[2]"Damages awarded in an adjudication brought against a local governmental entity arising under a contract . . . may not include: (1) consequential damages, except as expressly allowed under Subsection (a)(1)," which states: "(a)(1) *the balance due and owed* by the local governmental entity under the contract."  *See* LOC. GOV'T § 271.153(a)(b) (emphasis added).

waiver is affected by "clear and unambiguous" language. *See* TEX. GOV'T CODE ANN. § 311.034 (West 2013); *see also Oncor Elec. Delivery Co. LLC v. Dallas Area Rapid Transit*, 369 S.W.3d 845, 849 (Tex. 2012); *Tooke*, 197 S.W.3d at 332–33. Any ambiguity should be resolved in favor of retaining immunity. *Taylor*, 106 S.W.3d at 697.

If an alleged breach of contract does not involve a local governmental entity, a claim for lost profits is not barred. *See Phillips v. Carlton Energy Group, LLC*, 475 S.W.3d 265, 279–80 (Tex. 2015); *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994); *Park v. Payne*, 381 S.W.3d 615, 618–19 (Tex. App.—Eastland 2012, no pet.). But with regard to an entity of local government, immunity from liability is not waived for claims that seek statutorily excluded damages like loss of profits, which are "consequential damages." *Tooke*, 197 S.W.3d sat 346; *see* LOC. GOV'T § 271.153. We note that Seymour seeks "damages" that "the plaintiff has sustained" being "deprived of the benefit that it could have reasonably anticipated from full performance of the contract." Correspondingly, in the prayer of its original petition, Seymour "prays for payment of amounts due by defendant Baylor pursuant to the 1994 contract." In other words, Seymour apparently seeks the profits it would have received had Baylor continued to purchase treated water exclusively from Seymour. Seymour has not expounded further upon what it meant by seeking "the benefit . . . reasonably anticipated from full performance of the contract" but, as pleaded, we can conceive of no damages other than loss of profits implied thereby for Baylor's alleged breach of the requirements contract. In this context, immunity is not waived for such damages. They are not damages "due and owed" and instead, they are consequential damages, which are strictly prohibited by Section 271.153(b)(1). *See* LOC. GOV'T § 271.153; *Tooke*, 197 S.W.3d at 346.

15

We conclude that Baylor's immunity from suit or liability has not been waived for an implied claim of lost profits. In *Tooke v. City of Mexia*, the Tooke's entered into a three-year contract with the City of Mexia to furnish labor and equipment to collect brush and leaves left curbside within the city. 197 S.W.3d at 329–30. However, shortly after a year, the City discontinued the contract; the Tooke's sued for breach of contract and damages of loss of profits for the two years remaining on the contract. *Id.* at 330. However, the Supreme Court of Texas concluded that while the Tooke's were paid for the work that they completed, they sought lost profits for the work "they should have been given." *Id.* at 343. This, the court determined, constituted consequential damages, which are expressly excluded by Section 271.153. *Id.* at 346; *see* LOC. GOV'T § 271.153(b)(1). Accordingly, the City of Mexia maintained its immunity from the Tooke's damages claim. *See Tooke*, 197 S.W.3d at 346.

Courts have routinely applied *Tooke* to claims that ultimately seek lost profits, concluding that immunity has not been waived. *See, e.g.*, *Zachry Const. Corp. v. Port of Houston Auth. of Harris Cnty.*, 449 S.W.3d 98, 108–09 (Tex. 2014) (reaffirming *Tooke's* conclusion that absent permissible damages, no waiver of immunity exists); *City of Houston v. Petroleum Traders Corp.*, 261 S.W.3d 350, 359 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding fuel seller's breach-of-contract claim sought impermissible consequential damages where the City of Houston only purchased some of the fuel contracted for and plaintiff sought lost profits for unpurchased fuel); *City of Heath v. Williamson*, No. 05-20-00685-CV, 2021 WL 1731796, at *3 (Tex. App.—Dallas May 3, 2021, no pet.) (mem. op.) (concluding immunity was not waived where plaintiff sought "lost profits, and loss of the benefit/expectation of the contract"); *La Joya Indep. Sch. Dist. v. Trevino*, No. 13-17-00333-CV, 2019 WL 1487358, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. dism'd) (mem. op.) (concluding that plaintiff's breach-

of-contract claim seeking recovery of fees and commissions that he would have earned for future services had contract continued through end of term constituted lost profits, which were consequential damages excluded from recovery under Section 271.153).

Although we are unable to determine a form of damages other than lost profits that may be contemplated by Seymour's pleadings, we cannot conclusively say that an incurable defect in such pleadings exists. *See Miranda*, 133 S.W.3d at 226–27; *Haddix v. Am. Zurich Ins. Co.*, 253 S.W.3d 339, 346 (Tex. App.—Eastland 2008, no pet.) ("Texas Courts have signaled a preference for allowing a plaintiff an opportunity to amend before dismissing a suit in response to a plea to the jurisdiction."). Seymour should be given an opportunity to amend its pleadings to include contemplated damages not statutorily barred by governmental immunity, if any. *See Miranda*, 133 S.W.3d at 226–27; *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 104–05 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (remanding the case for an opportunity to replead where appellate court sua sponte identified a pleading defect). Accordingly, we (1) overrule Baylor's sole issue in part because the trial court correctly determined that the contract is a requirements contract, but (2) sustain its issue in part because the trial court failed to narrowly tailor its order regarding the damages for which there is no statutory waiver of immunity.

D. *Seymour May Seek Attorney's Fees*

Seymour's second issue challenges the trial court's order granting Baylor's plea to the jurisdiction as to Seymour's request for attorney's fees and injunctive and declaratory relief. Seymour argues that Section 271.153 was specifically amended to allow the relief that it seeks. Baylor counters that the statutory provision permitting attorney's fees is only effective for contracts executed after June 19, 2009, which this contract was not.

17

First, we note that Section 271.153 only permits injunctive relief for contracts involving the right of first refusal of the sale or delivery of at least 1,000 acre-feet of reclaimed water for commercial purposes. *See* LOC. GOV'T § 271.153(c) ("Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by Section 271.151(2)(B)."); *id.* § 271.151(2)(B) (Defining a contract of this subchapter to include "a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use."). Additionally, while the Uniform Declaratory Judgment Act typically allows parties to a contract to seek a determination of their rights and responsibilities, it does not do so for governmental entities. *See Multi-Cnty. Water Supply Corp. v. City of Hamilton*, 321 S.W.3d 905, 907–08 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Moreover, because our decision today concludes that the contract is a requirements contract, Seymour's claim for declaratory judgment is moot. Accordingly, we must affirm the portion of trial court's order that dismisses Seymour's requests for injunctive and declaratory relief.

The central issue surrounding the trial court's dismissal of Seymour's request for attorney's fees is—when the contract was "executed." The legislature provided a waiver of immunity for reasonable and necessary attorney's fees but only if the contract was executed after June 19, 2009. *See* Act of May 31, 2009, 81st Leg., R.S., ch. 1266, § 17 ("The change in law made by this Act applies only to a claim that arises under a contract executed on or after the effective date of this Act. A claim that arises under a contract executed before the effective date of this Act is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose."); *Harris Cnty. Flood Control Dist.*, 309 S.W.3d at 618 (recognizing the limitation of the waiver of immunity for attorney's

fees for contracts executed before June 19, 2009). Baylor postulates that the contract was "executed" in 1994 when the Corporation and Seymour entered into it. Seymour, on the other hand, contends that it was not executed for the purposes of Section 271.153(a)(1) until Baylor came into existence and accepted the contract assignment. For the reasons stated below, we agree with Seymour.

The legislature did not define "executed" when it directed that the change in the law applied only to a claim that arose under a contract "executed" after the Act's effective date, so we apply the term's plain and ordinary meaning. Act of May 31, 2009, 81st Leg., R.S., ch. 1266, § 17; *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."). "Execute" means "to carry (something) out fully [or] to put (something) completely into effect." *Execute*, MERRIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/execute (last visited January 27, 2025); *see City of Houston v. Williams*, 353 S.W.3d 128, 139 (Tex. 2011) (noting previous interpretations of "execute" to mean "finish" or "complete"). Section 271.151(2)(A) similarly requires that a contract be "properly executed *on behalf of the local governmental entity*." LOC. GOV'T § 271.151(2)(A) (emphasis added). Moreover, it is not necessary that the parties sign the contract to execute it unless the parties agree to such. *Williams*, 353 S.W.3d at 139.

Baylor's argument hinges on the contract being executed by the Corporation in 1994, rather than when it was assigned to and accepted by Baylor. But the Corporation had no authority to execute a contract on behalf of Baylor, let alone do so more than twenty years prior to Baylor's existence. *See* LOC. GOV'T § 271.151(2)(A). Rather, only Baylor could execute a contract on its behalf. *See id.* For the purposes of Section 271.151(2)(A) and Section 271.153(a), the contract was "executed" by Baylor when it accepted the assignment and operated in accordance

19

with the contract's terms.  *See* Loc. Gov't § 271.151(2)(A); Act of May 31, 2009, 81st Leg., R.S., ch. 1266, § 17; *Williams*, 353 S.W.3d at 139.  Because that occurred after the 2009 amendment that allows a party to recover reasonable and necessary attorney's fees from a local governmental entity, the Legislature has waived Baylor's immunity from such relief.  *Williams*, 353 S.W.3d at 139.  We overrule Seymour's second issue except as it as it relates to its request for attorney's fees.

*This Court's Ruling*

We affirm the trial court's order to the extent that it dismisses Seymour's "'Fifth Cause of Action' seeking declaratory and injunctive relief."  We reverse the trial court's order to the extent that it dismisses Seymour's claim for attorney's fees.

We affirm in part that portion of the trial court's order that denies Baylor's plea to the jurisdiction on Seymour's claim for breach of the requirements contract, but we reverse the order in part and remand this cause to the trial court with instructions to (1) narrowly tailor its order to exclude any damage claim for which there is no statutory waiver of immunity and (2) provide Seymour an opportunity to amend its pleadings to specify the damages it asserts that are not barred by statutory immunity, if any.


W. BRUCE WILLIAMS
JUSTICE


January 30, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

20